# WEADE ET AL. *v.* DICHMANN, WRIGHT & PUGH, INC.

No. 179. Argued February 1, 1949.—Decided June 27, 1949.

*William E. Leahy* argued the cause for petitioners. With him on the brief were *Michael F. Keogh, J. Robert Carey, Richard H. Love, Edward L. Breeden, Jr., Walter E. Hoffman* and *William J. Hughes, Jr.*

*Leavenworth Colby* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison* and *Paul A. Sweeney.*

MR. JUSTICE REED delivered the opinion of the Court.

On August 3, 1945, at Old Point Comfort, Virginia, petitioners, Mrs. Lillian A. Weade and Mrs. Roberta L. Stinemeyer, purchased tickets and embarked as passen-

gers on the *Meteor,* a steamboat owned by the United States through the War Shipping Administration and operating between Norfolk, Virginia, and Washington, D. C. The ladies retired to their stateroom about 11:00 p. m. and because of the warm weather opened both the glass and the shutter of the window which faced onto the boat deck. During the night the second cook of the *Meteor* entered the stateroom through the open window and raped. Mrs. Weade, who was sleeping in the lower berth. Mrs. Stinemeyer suffered fright and shock from witnessing this atrocity. The perpetrator of the crime was subsequently tried, convicted, and executed.

This case involves the liability of a general agent to passengers under a contract similar to that discussed in *Cosmopolitan Shipping Co.* v. *McAllister; ante,* p. 783, decided this day. The agency agreement covered passenger boats through an addendum to the contract providing for additional services by the general agent.[1]

Petitioners, Lillian A. Weade and her husband, instituted a civil action for damages against respondent in the United States District Court for the Eastern District of Virginia. The husband alleged as his damages loss of consortium and the expenses of the hospitalization of his wife. Petitioner Mrs. Stinemeyer brought a separate civil action for her damages in the same court. Jurisdiction in both actions was based on diversity of citizenship, and the two civil actions were consolidated for trial. In addition Mrs. Weade filed a libel in admiralty against the United States, which action has been continued pending the final determination of the present proceedings.

The complaint of Mr. and Mrs. Weade alleged, so far as now important, that the steamboat was operated as a common carrier by respondent and that petitioners

---

[1] See note 3, *infra,* and 46,C. F. R. Cum. Supp. § 306.44.

were injured through the failure of respondent to provide adequate protection for its passengers from the personal misconduct of its employees, and through the failure to use due care in the selection of reliable, careful, and competent employees. The complaint of Mrs. Stinemeyer is substantially the same as to the specifications of negligence, though it did not assert that respondent itself was a common carrier, but did allege that the injury occurred through the act of respondent's employees. The respondent's answer denied that the vessel was operated by it as a common carrier and that the master and crew of the vessel were its employees. The answer further alleged that the vessel was operated by the War Shipping Administration, and that respondent only performed certain services for the owner of the ship as general agent in accordance with the standard service agreement.

The jury as triers of fact in this civil proceeding were instructed as a matter of law that by virtue of the contract respondent was the actual operator of the vessel as a common carrier owing the highest degree of care to its passengers. The trial judge further charged that, as a common carrier, this duty to exercise the highest degree of care extended to all acts of the carrier and included the providing of safe accommodations and protection for passengers, the providing of a suitable number of watchmen, and the selection of competent, careful, and sober employees. The jury returned verdicts for petitioners, and the trial judge denied the motion of the respondent for judgment notwithstanding the verdict, stating as his reason therefor: "While the case of *Hust* v. *Moore-McCormack Lines, Incorporated,* 328 U. S. 707, is not precisely in point, it is my view that it is controlling so far as the liability of the defendant is concerned." On appeal the Court of Appeals for the Fourth Circuit reversed and held that under *Caldarola* v. *Eckert,* 332 U. S. 155,

respondent was not the owner *pro hac vice* in possession and control of the vessel and thus could not be liable as a common carrier for the safety of the passengers. *Dichmann, Wright & Pugh* v. *Weade,* 168 F. 2d 914.

Under our holding today in No. 351, *Cosmopolitan Shipping Co.* v. *McAllister, ante,* p. 783, the instructions referred to above were erroneous. Respondent was not the owner *pro hac vice,* was not a common carrier operating the vessel, and was not the employer of the master or crew. The trial of the present proceeding revolved around these questions and did not concern the problem of negligence on the part of respondent or of its own agents in handling the ship or crew on voyage as an agent of the United States as distinguished from an employer of the master and crew or owner *pro hac vice.*

Petitioners urge in point 3 of their brief as a ground for upholding the decision of the trial court that respondent, because of the duties imposed upon it by the General Agency Agreement, was liable as a common carrier as far as the public was concerned. In support of this contention they point to the duties of the general agent to issue tickets, maintain the vessel in the service directed by the United States, maintain terminals and offices, arrange for the loading and unloading of passengers, arrange for advertising, provision the ship, and procure officers and crew for hire by the master. The performance of such shoreside duties, however, does not make the agent liable as a common carrier to the public or anyone.[2]

At the insistence of the Navy, the War Shipping Administration in 1945 instituted a nightly service of two steamboats between Norfolk and Washington. The name given to this service was the Washington-Hampton Roads Line, and the *Meteor* was one of the two vessels employed

---

[2] See *Cosmopolitan Shipping Co.* v. *McAllister, ante,* p. 783.

therein. These two vessels were assigned to respondent as general agent by a passenger addendum to the standard GAA 4-4-42 agreement,[3] under which respondent had been general agent for some twenty cargo vessels. It will be noted that, under Article 3A (f) of the addendum, the general agent was to arrange for the transportation of passengers and to issue tickets for this purpose. The

---

[3] "Whereas, the United States of America (Herein called the 'United States') acting by and through the Administrator, War Shipping Administration, and Dichmann, Wright & Pugh, Inc. (herein called the 'General Agent') entered into an Agreement (Contract WSA-4098) dated January 9, 1943 (herein called the 'Service Agreement') whereby the United States appointed the General Agent as its agent to manage and conduct the business of cargo vessels assigned to it by the United States; and

"Whereas, it is desirable to have as far as practicable both cargo vessels and passenger vessels operated under the uniform provisions of one agreement.

"Now, Therefore:

"The United States and the General Agent agree that passenger vessels heretofore or hereafter allocated to the General Agent to conduct the business of the vessels as agent of the United States shall be governed by the provisions of the Service Agreement modified as follows:

"Section 1. Article 3A of the Service Agreement is hereby amended by adding a provision following subsection (e) thereof as follows:

" '(f) Shall arrange for the transportation of passengers when so directed, and issue or cause to be issued to such passengers customary passenger tickets. After a uniform passenger ticket shall have been adopted by the United States, such passenger ticket shall be used in all cases as soon as practicable after receipt thereof by the General Agent. Pending the issuance of such uniform passenger ticket, the General Agent may continue to use its customary form of passenger ticket.'

"Section 2. The vessels to which the Service Agreement will apply by operation of this Part II, are as listed on Exhibit B attached hereto and made a part hereof, and such additional vessels as may from time to time be assigned to the General Agent by letter agreement.

"In witness whereof . . . ."

ticket, which is set out in the margin,[4] bears the express notation that the steamboat line was "Operated by United States of America, War Shipping Administration," and that respondent was serving in the capacity of an agent.

Respondent's duties were to service the ships and to "arrange for the transportation" of passengers on them. The duty of a common carrier, on the other hand, is to transport for hire whoever employs it.[5] Here the contract called for the actual transportation to be carried out by the War Shipping Administration. The respondent's duties ended at the shore line. *Cosmopolitan Shipping Co. v. McAllister, supra.* The cases cited by petitioner holding a transportation agent liable as a common car-

---

"Issued by

"Washington-Hampton Roads Line

"Operated by United States of America, War Shipping Administration

"One First Class Passage

"Norfolk, or Old Point Comfort Va. to Washington, D. C.

"Subject to the Following contract:

"This ticket is void unless officially stamped and dated.

"Baggage valuation is limited to $100 for and adult and $50 for a child, unless purchaser hereof declares a greater valuation at time baggage is presented for transportation and pays excess valuation charges according to tariff rates, rules and regulations.

"The company will under no circumstances be responsible for any moneys or valuables unless deposited with the Purser on Steamer, nor will they be responsible for any baggage unless properly checked.

"This ticket is limited for passage within thirty days from date of sale stamped on back.

"Dichmann, Wright & Pugh, Inc., Agent.

"I. S. Walker, Gen. Passenger Agent."

[5] *Niagara* v. *Cordes,* 21 How. 7, 22; *Washington ex rel. Stimson Lumber Co.* v. *Kuykendall,* 275 U. S. 207, 211; *United States* v. *Brooklyn Eastern District Terminal,* 249 U. S. 296, 305–306. Cf. *Lehigh Valley R. Co.* v. *United States,* 243 U. S. 444; *I. C. C.* v. *Delaware, Lackawanna & Western R. Co.,* 220 U. S. 235.

rier involve situations where the actual movement of goods or passengers was carried out by the agent.[6] Under the contract respondent here was not in any way engaged in the carriage of passengers between Norfolk and Washington and had never held itself out to the public as ready to engage in such traffic. As a mere arranger of transportation it does not incur the liability of a common carrier.

Apart from their reliance upon respondent's control of the vessel on voyage under the agency contract, petitioners further argue that respondent as an agent is independently liable for its negligence in procuring unsuitable crew members. This theory of liability was not relied upon at the trial. Instructions upon the point were not given or requested. The court did charge that as principal and operator of the vessel the respondent was responsible for any tort committed by the steamship personnel and as a common carrier was under the duty to exercise the highest degree of care for the safety of the passengers including the selection of personnel. It was upon the basis of respondent's liability as common carrier that petitioners developed their causes of action, and upon that theory the jury, under the instructions discussed above, returned a verdict in their favor. At the conclusion of the trial judge's charge, counsel for petitioners stated, "If your Honor please, we have no exceptions." Under these circumstances, error cannot be urged as to this point. See Rule 8 (1), Supreme Court of the United States; Rule 51 of the Federal Rules of Civil Procedure; *United States* v. *Atkinson,* 297 U. S. 157.

By the decision below, the trial court was directed to enter a judgment for respondent, which had filed a

---

[6] *United States* v. *Brooklyn Terminal,* 249 U. S. 296; *Union Stock Yard Co.* v. *United States,* 308 U. S. 213.

motion for judgment notwithstanding the verdict. As there were suggestions in the complaint and evidence of alleged liability of respondent to petitioners for respondent's own negligence while acting as general agent, this direction should not have been given. See *Brady* v. *Roosevelt S. S. Co.*, 317 U. S. 575.[7]   The decision is modified so as to eliminate the direction to enter judgment.[8]

We express no opinion as to what circumstances might fix liability upon the respondent for its own actions as general agent.

*Affirmed as modified.*

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE dissent.

---

[7] See 2 Restatement, Agency § 358.

[8] *Globe Liquor Co.* v. *San Roman*, 332 U. S. 571; *Cone* v. *West Virginia Paper Co.*, 330 U. S. 212.