## LAFFOON v. WATERMAN S. S. CORP.

United States District Court
S. D. New York.

April 13, 1953.

924

Nathan Baker, New York City, for plaintiff.

Gay & Behrens, New York City, Edward J. Behrens, New York City and James A. Hageman, New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

The defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The defendant urges that the plaintiff has had a complete trial of the merits of his claim in an admiralty proceeding instituted by him against the United States of America; that the basis of the plaintiff's claim in this action was the same basis of a claim in his suit already adjudicated, where he was the libelant and the United States of America was the respondent. The basis of the claim for recovery in both actions, defendant says, is the charge that a defective winch was used which was the proximate cause of the injury to the plaintiff here (libelant in the admiralty action). This issue having been litigated in the admiralty suit, the defendant here urges that the finding of this Court on that issue against the libelant there, plaintiff here, is *res judicata* and the plaintiff is estopped from recovering any judgment herein in view of the previous trial of the issues.

The plaintiff, an employee of Sancor Corporation, was injured on March 12, 1947, while certain re-conversion work was taking place on board the S/S Robert W. Hart, at the Powers Shipyard in the State of New Jersey. At that time the ship was owned by the United States of America and was being serviced by the defendant as general agent under a General Agency Agreement.

In 1948, the plaintiff instituted the present action and also commenced an action against the United States of America. Answers were filed in both actions, and the United States of America impleaded the trustees of Sancor Corporation, which was then in bankruptcy, in the admiralty suit. The allegations of the complaint were substantially the same as the allegations of the libel, the real difference being in the identities of the defendant and the respondent and the allegations that the negligent acts which led to the injury were those of the respondent in the one case or the defendant in the other.

The admiralty suit was tried on the merits before this Court, while the action at law was at issue and awaiting trial. Indeed, at the commencement of the admiralty suit, the following statement was made by Laffoon's counsel:

"Mr. Baker: Yes, we had a pre-trial, I might state, your Honor, so that the case might be clear, and there is another action pending against the Waterman Steamship Company, which is general agent in this case of this vessel, and a pre-trial was held in this case, and being that both actions were reached at about the same time, we have decided to move this action and not the civil action at this time." (p. 5, record.)

The admiralty trial consumed four days and upon the conclusion thereof this Court filed an opinion, Laffoon v. U. S., 101 F. Supp. 823, findings of fact and conclusions of law. A decree was subsequently entered, dismissing the libel on the merits. Libelant took no appeal from the final decree.

The first cause of action in the suit at bar based upon the alleged unseaworthy condition of the vessel was dismissed by Judge Noonan of this court, upon a motion of the defendant, because "seaworthiness is peculiarly and exclusively the obligation of the owner of the vessel * * *". 111 F.Supp. 960. Opinion dated November 28, 1950.

The second cause of action was grounded jurisdictionally upon diversity of citizenship. In this cause of action the plaintiff claimed his injury was due to the negligence, carelessness and recklessness of the defendant. Judge Noonan denied the motion to dismiss the second cause of action. Certainly as a pleading this cause of action was good, for an agent is responsible under certain conditions, for its own negligence or the negligence of its agents.

On October 16, 1951, a pre-trial order was entered in the instant case by Judge Leibell. A substantial number of facts were agreed upon between the parties, among them being: that the vessel was owned by the United States of America; that the defendant entered into a general agency contract with the United States of America; that the vessel was delivered to the defendant by the Maritime Commission on January 31, 1947; that the United States of America acting through the defendant as its general agent, signed specifications for work which Sancor Corporation was to do on the vessel under a contract between the United States of America and Sancor Corporation, dated January 21, 1946. The following important facts are also stipulated: that plaintiff was employed as a rigger of Sancor Corporation and was working on the vessel while she was docked at the Powers Shipyard on March 12, 1947, the date of the accident; that the operation then in progress was the placing of a pontoon hatch cover on the hatch opening at the 'tween deck of No. 2 hold; that the vessel's winches which were being used at the time were being operated by employees of Sancor Corporation; that the steam for the winches was supplied by ship's employees in the engine room and that certain ship's officers were aboard.

The issues formulated by the Court in the pre-trial order are significant. They were:

(1) Who was in control of the vessel at the time of the accident to plaintiff?

(2) Was there any duty or obligation imposed on Waterman to put the winches in proper working condition before plaintiff was put to work as a rigger at hold No. 2?

(3) Was the winch actually defective so that it failed to operate properly?

(4) Was it the duty and obligation of Sancor Corporation to put the winches in proper working condition before plaintiff was put to work as a rigger at hold No. 2?

(5) Did Waterman fail to make a proper inspection of the winches in cooperation with the Maritime Commission in preparing the specifications for the repair work on the vessel?

(6) and (7) are not important on the issue before the Court.

(8) Was there any obligation on Waterman to warn the plaintiff concerning the condition of the winch, if it was defective?

The stenographic record in the admiralty suit has been submitted to this Court as part of the motion papers. It is my recollection, as the presiding Judge in the admiralty trial, that the libelant's claim for recovery was grounded on his contention that the winch was defective and that this was the proximate cause of his injury. I am supported in my recollection by the following statement made by plaintiff's counsel (libelant's proctor in the admiralty suit) upon the opening of the admiralty trial:

"Mr. Baker: We have two counts. We have one count for unseaworthiness, and the other count, or the second count, is for negligence. And we also allege that there were leaks in the bow, that the drums would creak, that the brakes were defective and would not hold properly, and that the winches were defective, and that the steam was improperly furnished to the winches,

so that the pontoon hatch cover upon which the libelant, my client, was working when he gave the directions to the operator of the winch, through the men, to lift it slowly by reason of the condition which I described, it came up suddenly with a jerk, and threw him off, and precipitated him into the hold below, a distance of about 50 feet, and he sustained very serious injuries." (pp. 3–4.)

It follows, therefore, that if the winches were not defective, it would be of no import to either case to resolve issues such as who was in control of the vessel, or whether there was any duty to put the winches in proper condition, or who had that duty, or whether proper inspection of the winches had been made, or who might have had an obligation to warn the plaintiff concerning the condition of the winch.

This Court made a disposition of all contested issues of fact in the admiralty suit. The libelant there (the plaintiff here) testified and called witnesses in his behalf. Specifically witnesses Crisalli and Betson testified at great length, concerning the alleged defective condition of the winches. It was clear at the trial and it is apparent from the record of that trial, that libelant's right to recovery stemmed from the alleged defective condition of the winches.

In my opinion, dated December 21, 1951, written upon the conclusion of the admiralty suit, I stated the following:

"In substance, libelant alleges that respondent was negligent in the maintenance of the winches aboard ship, and that this negligence was the proximate cause of his injury. (The proximate cause of the injury was, therefore, fixed.) Libelant alleges that the specific defects in the winch were leaks in the winch valves, creeping of the drum, and defective brakes. I do not find that any of these allegations have been substantiated by a fair preponderance of the evidence adduced at trial. There was some evidence to the effect that the winch drum creeped in neutral, and that it jumped when libelant gave the signal to move the pontoon cover,

but I find this evidence less than convincing. It would appear that the convulsive movement of the pontoon more likely was caused by negligent rigging techniques used by Sancor. The laying of the pontoon covers with the fore and aft ends of the hatch open, the upward angle at which the pulling force was exerted on the pontoon cover by the faulty rigging technique of using a shackle instead of a snatch box, and libelant's own foolhardy conduct in kneeling on the cover were, in all likelihood, the proximate cause of the sudden movement of the pontoon and libelant's subsequent injuries." (pp. 7 and 8.)

Furthermore, the following specific findings of fact were made by this Court:

"24. Libelant has failed to prove by a fair preponderance of the evidence that the winch involved in moving the pontoon hatch cover was not in good order and condition, or not capable of performing the task it was designed to perform.

"25. In connection with placing the pontoon hatch cover, no employee of respondent issued instructions as to the method to be used or the manner of doing work, and all orders to Sancor's employees were issued exclusively by the foremen or supervisory personnel of Sancor."

"33. Libelant's injuries were caused by faulty rigging techniques employed by libelant and Sancor."

Thereafter, a final decree was entered, in the admiralty cause, on January 15, 1952, wherein it was

"ordered, adjudged and decreed that the libel herein be, and the same hereby is, dismissed on the merits."

In a supplemental answer served subsequent to the aforesaid decree of dismissal and pursuant to an order of this court (Weinfeld, J.) the defendant herein pleaded that at the times mentioned in the complaint it was a general agent of the United States of America, and under the terms of the general agency agreement, the latter agreed to indemnify and hold the defend-

ant harmless from all claims asserted for injury to persons arising out of the operation or use of the vessel or the performance by the defendant of its obligations under the agreement; that by reason of these provisions in the contract, the United States would be required to indemnify the defendant and pay the amount of any judgment which the plaintiff might recover against the defendant in this action; the supplemental answer also pleads that the plaintiff filed a libel against the United States of America on July 7, 1948, and the pleadings in that action are set forth; that all of the issues of law and fact in the admiralty cause were tried on the merits and the trial court filed an opinion, findings of fact and conclusions of law; that a final decree was entered dismissing the libel on the merits. Copies of the relevant documents are annexed to the supplemental answer. The supplemental answer then pleads that the claim if presented by the plaintiff is substantially the same claim presented in the admiralty cause; that the plaintiff had a complete trial of the merits of his present claim by proceeding to trial and final judgment in the admiralty cause and that he is estopped, both in law and in equity, from recovering any judgment against the defendant, and that all of the claims of the plaintiff presented in the pending case have previously been adjudged against the plaintiff and are *res judicata.*

The issue, therefore, resolves itself to whether the basic issue to be tried in the instant case as formulated by the pre-trial judge (Leibell, J.) and respective counsel is now *res judicata* because of the trial and final decree entered in the admiralty cause; or, stated another way, whether, since the claim to recovery stems from an alleged defective winch in both cases, the resolution of that issue against the suing party in the admiralty cause is *res judicata* against the same suing party in the law cause.

The resolution of this issue is proper by summary judgment, for I do not perceive any questions of fact which require a trial and the opportunity to observe and determine the credibility of witnesses.

At the outset, it is proper that I dispose of a confusion on the part of the plaintiff as to whether the order of Judge Noonan, denying the motion to dismiss the second cause of action for negligence, carries with it the implication that a question of fact exists concerning the negligence committed by the defendant Waterman or its employees. The pending motion for summary judgment looks through the mere allegations in the complaint. I note also that the plaintiff has not submitted any affidavits in opposition to the defendant's motion for summary judgment. Upon the posture of the second cause of action on the motion before Judge Noonan, it was adequate, for, it charged the defendant with a tort which it alleged was committed by it. As a pleading it was proper, for despite the defendant's position as a general agent, it could not be exonerated for its own torts. Weade v. Dichmann, 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704. The determination of whether the defendant shall have summary judgment in this action embraces wider considerations and can be made from the pleadings, the pre-trial order, the stenographic record of the admiralty trial, the Court's opinion, findings of fact and conclusions of law in that trial. I am mindful of the admonition by the Court of Appeals for this Circuit that summary judgment should not be granted where the opportunity to appraise important demeanor evidence will be lost. Colby v. Klune, 2 Cir., 1949, 178 F.2d 872; Dyer v. MacDougall, 2 Cir., 1952, 201 F.2d 265. This is not the situation here, for the result on this motion for summary judgment will depend upon whether the court in the admiralty suit made a determination upon the merits that the winch was not defective, whether the same alleged defective condition is claimed in this action to be the proximate cause of the injury, and whether as a matter of law if there has been such adjudication it is *res judicata* in this suit and plaintiff is estopped from litigating his claim that the winch was defective.

As I have already indicated, Laffoon has already had one trial on the merits. Fourteen witnesses were called and four days were consumed in the trial. A final ad-

judication was rendered upon the completion of that trial. The case at bar is typical of the dual suits which have been brought against the United States and its general agents as a result of the confusion created by Hust v. Moore-McCormack Lines, 1946, 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534 and Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692. As a result, many persons who had claims for damages arising out of maritime torts instituted two separate actions, so that the rights of the injured parties would be fully protected in the event that there was a dismissal upon the "general agency" grounds (not on the merits), provided for by the McAllister case. In the usual cases, plaintiffs tried their law actions first and where they endeavored later to try their admiralty causes against the United States of America a plea of *res judicata* was successful. See Bruszewski v. United States, 3 Cir., 1950, 181 F.2d 419; Benjamin v. United States, D.C.S.D.N.Y.1950, 92 F.Supp. 489, per Goddard, J.; Adriaanse v. United States, 2 Cir., 1950, 184 F.2d 968, certiorari denied, 340 U.S. 932, 71 S.Ct. 495, 95 L.Ed. 673. The issue here is a narrow one since the same alleged defective winch is the gravaman of both suits. It could not alter the result if there were further litigation on the question of who was in control of the vessel, or what duties anyone had with reference to the winch, or whether the winch was properly inspected, or whether anyone warned anyone else about the condition of the winch. The defendant summarizes the issue quite appropriately in this fashion:

"In short, the only difference between the complaint and the libel is that the plaintiff charges different people with negligence concerning the winch, which has been found to have been in good order and condition." (p. 5, reply brief.)

While it is true that the defendant in this action has never had his day in court and thus mutuality is lacking as the plaintiff here contends, the plaintiff has had his and the case clearly falls into that broader ground now recognized by the Appellate Courts, the text-writers and the American Law Institute, Restatement of the Law on Judgments. Section 96 of the Restatement states (p. 472):

"*Successive actions against tort-feasors where duty of indemnity.*

"(1) Where two persons are both responsible for a tortious act, but one of them, the indemnitee, if required to pay damages for the tort, would be entitled to indemnity from the other, the indemnitor, and the injured person brings an action against the indemnitor because of such act, a valid judgment

"(a) for the defendant on the merits for reasons not personal to the defendant terminates the cause of action against the indemnitee."

The Restatement then continues (p. 473):

"Normally a person's rights should not be foreclosed without an opportunity to be heard by an impartial tribunal which has jurisdiction over him. On the other hand, a person should not be entitled to litigate the same issue in more than one action. * * * The desirability for equality between litigating parties with reference to the rules of res judicata is not, however, of pervading importance and disappears when there are countervailing reasons for requiring one to be bound while the other is not. In the situation dealt with in Subsection (1), there is no substantial unfairness to the injured person in binding him by an unfavorable decision although the indemnitee is not bound by one favorable to him, since he should be required to present his full case against the indemnitor."

The Restatement then sets forth the Rule which has applicability to the case at bar (p. 474):

"The rule stated in Section 99 by which a judgment for the defendant on the merits in an action against an alleged tort-feasor bars a subsequent action against another person whose liability is wholly dependent upon the tortious quality of the act on which the first action was based, is a corresponding situation in which it is not unfair that the rules of res judicata

should work against the unsuccessful party although were the judgment otherwise they would not work in his favor."

Both Judge A. N. Hand, speaking for a unanimous court, in Adriaanse v. United States, supra, and Judge Hastie speaking for the majority, in Bruszewski v. United States, supra, base their decisions upon the rationale that after a plaintiff has had a full and fair trial on the merits and has failed, he should not have a second opportunity to prove the very matter which he failed to prove on the first trial. In short, he should not be permitted to re-litigate "the tortious quality of the act on which the first action was based."

The plaintiff grounds his right to a denial of defendant's motion on his contention that the parties defendant and the causes of action differ. I have already indicated in this opinion that the causes or, put another way, the claims for relief, do not differ. Indeed, Judge Leibell's pre-trial order in the case at bar indicates quite clearly that the plaintiff's right to recovery flows from his claim of a defective winch and it matters little who was in control or who operated the winch, if the winch was not defective.[1]

The absence of identity of parties is rapidly disappearing as an effective defense to *res judicata* if other factors, present in this case, exist.[2]

Plaintiff urges that there is no privity between the defendants here and the respondent, United States of America, in the admiralty suit, and hence, the defendant cannot set up the judgment for the respondent in the admiralty suit as *res judicata* or as grounds for estoppel.

 I have already indicated that there are exceptions to the general rule that an estoppel by judgment must be mutual or that there must be absolute privity between the parties. See also Restatement of Judgments, Chapter 4, Section 99. In the case at bar, the United States of America, the successful party in the admiralty suit, would be liable under the general agency agreement with the defendant herein, to indemnify it against any recovery which the plaintiff might have in this suit. Under such circumstances, judgment in the first action has been held by the Court of Appeals for the Second Circuit to create an effective estoppel against the suing party which would prevent a reconsideration of his claim in the present suit. Adriaanse v. United States, supra. It appears, therefore, that there is present in the case at bar, not only those elements which would make this case a perfect exception to the general rule that an estoppel by judgment must be mutual, but there exists that privity in the form of indemnitor-indemnitee relationship, as well as principal and agent, between the United States of America and the Waterman Steamship Lines, for an effective plea of estoppel by judgment.

The requirement of mutuality of estoppel yields to public policy in certain instanc-

1. This Court found specifically in findings 24 and 25 that the plaintiff failed to prove that the winch was not capable of performing the task it was designed to perform and specifically in finding 33 that the libelant's injuries were caused by faulty rigging techniques employed by libelant and Sancor, thus removing completely the defective winch as a proximate cause of the injury.

2. If the plaintiff had tried the suit at bar before the admiralty suit, the trial would have been by jury. Customarily, the jury returns a general verdict. It is conceivable that a general verdict for the defendant in the law suit might leave some doubt as to the ground upon which the jury might have found for the de-

fendant, e. g. the jury could conceivably bring in a verdict for the defendant even though the winch might be defective but have found that control of the vessel at the time of the accident was not in the defendant; or that there was no duty or obligation on the defendant's part to put the winches in proper working condition or to properly inspect the winches. However, we are faced here with a situation where the admiralty suit was tried first before a Judge, and specific findings of fact were made upon the conclusion of that trial, in which the Court found the winches were not defective and furthermore that Laffoon's injuries were caused by faulty rigging techniques employed by Laffoon himself and his employer Sancor.

es. As a matter of public policy and fairness, a crucial fact issue already adjudicated on the merits in a prior suit should not be relitigated in a later case grounded for recovery on the very factual issue adjudicated. Scott, Collateral Estoppel by Judgment, 56 Harv.L.Review 1, 1942. Liberty Mutual Ins. Co. v. George Colon & Co., 260 N.Y. 305, 183 N.E. 506; Good Health Dairy Products Corp. v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 112 A.L.R. 401.

The plaintiff cites Lynch v. United Fruit Co., 4 N.J.Super. 404, 67 A.2d 346, as authority for the principle that a plea of *res judicata* or estoppel would be improper. However, the holding of the Appellate Division of the Superior Court was reversed by the New Jersey Supreme Court. See 4 N.J. 24, 71 A.2d 344, 1950 A.M.C. 518. It is interesting to note that the court was considering only the pleadings. This very interesting language is found in the opinion of Oliphant, J., writing for the Supreme Court, 71 A.2d 344, 345, 1950 A.M.C. 518, at page 519:

"Previous to the institution of this suit the same plaintiff had commenced an action for damages resulting from her husband's death by filing a libel in admiralty and complaint in the United States District Court for the Southern District of New York, naming the United States and the War Shipping Administration as defendants. The United States answered and impleaded the Bethlehem. Steel Company. The libel was dismissed before the trial of the instant issue. The complaint in that suit was identical, with one exception, to the one filed in this cause. Both asserted the accident was caused solely by the defective, unsafe and unseaworthy condition of the vessel. The exception was that here negligence is charged generally against the agents, servants and employees of the defendant in addition to the master, officer and crew of the vessel. This, plaintiff contends, distinguishes it from and takes it out of the category of the Caldarola case [Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, 91 L.Ed. 1968], citing Weade v. Dichmann, 1949, 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed.

1704 [1949 A.M.C. 1050], but in that case there were specifications of negligence on the part of the defendant itself, the hiring of an incompetent crew member and the failure to protect the vessel's passengers from the personal misconduct of its employees; while here, as has been pointed out, such specifications are lacking. The case does not therefore support plaintiff's contention."

It is noted that the Court indicated that despite the fact that the complaint charged only general fault and negligence of the defendant it should be dismissed because of the previous dismissal of a libel in the Federal Court upon similar allegations of negligence. In the case at bar, the specific charges of misconduct on the part of the defendant have been refined by Judge Leibell's pre-trial order, and it is evident that Laffoon's right to recovery flows from and depends upon his charge that the alleged defective winch was the proximate cause of the injury upon which issue I have specifically found against Laffoon after trial in the admiralty suit.

The defendant's motion for summary judgment is accordingly granted.

Settle order.