**Woodside C. RICHARDSON, Plaintiff,**

v.

**AMERICAN PRESIDENT LINES, Ltd.,
Defendant.**

United States District Court
S. D. New York.
July 26, 1956.

Henry Fogler, New York City, for plaintiff.

Dow & Symmers, New York City, for defendant. Frederick Fish, New York City, of counsel.

HERLANDS, District Judge.

On September 15, 1954, plaintiff caused to be filed a civil complaint against American President Lines, Ltd. Plaintiff's amended complaint (paragraph "Second"), filed December 13, 1955, alleges:

"That on or about the 11th day of February, 1952, certain engineers of the crew of the said vessel,[1] who were incompetent and unseaworthy, and certain representatives of defendant itself who were employees of defendant and not part of the crew, and not even alleged civil service employees as the crew is deemed to be, and who were paid by defendant and on defendant's payroll, did cause a major oil spill, as a result of which plaintiff was caused to slip against some drums that were secured to the after part of the house and be precipitated to the deck as a result of which he sustained fractures of the back and other painful and permanent personal injuries."

Plaintiff's amended complaint (paragraph "Third") further alleges:

"That said injuries were not caused by any negligence or want of care on the part of the plaintiff, but wholly and soley [sic] by reason of the negligence, carelessness and want of care on the part of the defendant, through its high ranking officers did negligently cause said oil spill; in that defendant through its high ranking officers did negli-

---

1.  Reference is to the S.S. Charles L. McNary.

gently cause said ship to go to sea without cleaning up said spill on the ship although defendant spent large sums of money in cleaning said oil spill from the waters of the harbor because local officials insisted upon enforcement of laws relating to pollution of the harbor; in that defendant through its said officers failed to fulfill its obligation to the plaintiff to provide for his health and safety at sea after said oil spill; in that if defendant could spend the time, effort and money to clean said harbor of oil, it could have cleaned the deck of the said ship; in that the defendant, through its own employees in Japan who were entrusted with great responsibilities, did send plaintiff to a doctor in Japan who did diagnose said fractures by X-ray, were negligent in ordering proper treatment for the serious injuries sustained and did cause and permit plaintiff to return to the ship and work; in that said employees in Japan were employees of defendant and were in no sense co-employees of plaintiff; in that defendant was negligent in the premises, under Weade v. Dicmann, [sic] Wright & Pugh, 337 U.S. 801 [69 S.Ct. 1326, 93 L.Ed. 1704], which existing law presently established by the Courts was expressly restated by Congress."

Pursuant to leave to amend granted on December 2, 1955, defendant amended its answer to include the following second affirmative defense:

"At all times referred to in the complaint the S.S. Charles L. McNary was owned by the United States of America and was employed as a merchant vessel within the meaning of the Suits in Admiralty Act, Title 46 U.S.Code, Sections 741 to 752 inclusive; a remedy was provided to plaintiff against the United States by the terms of said Suits in Admiralty Act; and by reason of said Suits in Admiralty Act and, more particularly, Section 745 thereof as amended December 13, 1950, c. 1136, 64 Stat. 112 [1112], the remedy provided against the United States of America was exclusive of the present action and by reason thereof plaintiff is not entitled to maintain the present action."

Before me for decision is defendant's motion for summary judgment based upon the above-quoted second affirmative defense. The moving affidavit of Arthur A. Alexander, vice-president of defendant's Eastern Division, recites that the S.S. Charles L. McNary, at all material times, was a vessel of the liberty-ship type owned by the United States and operated by defendant, as agent for the United States, under a general agency agreement dated March 28, 1951 (contract MC–49–GAA); that, at all material times, the vessel was operated pursuant to this agreement; and that all action taken by defendant with regard to the business of the vessel was solely in its capacity as general agent under the terms of said agreement. Annexed to the moving affidavit as Exhibit "A," are photostatic copies of the general agency agreement, addendum number one thereto, and a certificate of delivery of the S.S. Charles L. McNary by the National Shipping Authority to American President Lines, Ltd. under the terms and conditions of the general agency agreement.

Plaintiff's argument in opposition to defendant's motion is predicated upon two theories: (1) that the 1950 amendment of 46 U.S.C.A. § 745 was not intended to affect the position previously taken by the Supreme Court in Weade v. Dichmann, Wright & Pugh, Inc., 1949, 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704—that the general agent may be held liable for his own acts of negligence; and (2) that disputable issues of fact are presented as to whether certain of the allegedly negligent acts of defendant were within the ambit of the agency relationship because the general agent was not authorized to commit negligent acts. The specific allegedly negligent acts cited

by plaintiff as outside the scope of the agency relationship are the ordering of the S.S. Charles L. McNary to proceed on its voyage while its deck was still coated with oil; and, secondly, the conduct of defendant's port agent in Japan in sending plaintiff back to work on the ship after the port agent allegedly had the report of a doctor showing that plaintiff had fractures of the vertebrae.

The Court does not agree with either of plaintiff's theories.

■ Plaintiff's first contention—that 46 U.S.C.A. § 745, as amended in 1950, was not intended to change the rule laid down in the Weade case—flies in the face of the plain and unambiguous language of section 745. That section, so far as pertinent, provides:

"* * * where a remedy is provided by this chapter it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States or of any incorporated or unincorporated agency thereof whose act or omission gave rise to the claim: * * *"

Both the Fourth and Fifth circuits have interpreted the above quoted provision as barring a suit against the agent where the plaintiff is provided a remedy against the United States. Atlantic Coast Line R. Co. v. Agwilines, Inc., 5 Cir., 1952, 195 F.2d 459; Williams v. United States, 4 Cir., 1955, 228 F.2d 129, 132. Directly in point is the following language of the District Judge in the Williams case, quoted with approval by the Court of Appeals for the Fourth Circuit:

" 'While the claim now prosecuted against Moore-McCormack is not statutory and the only limitation is laches, discussion of its timeliness would be merely academic, for the claim itself is foreclosed by the 1950 amendment to the Suits in Admiralty Act. This amendment declares the cause of action afforded by the statute against the Government to be "exclusive of any other action by reason of the same subject matter against the agent * * * of the United States * * * whose act or omission gave rise to the claim". Libelant urges, and cites certain legislative history seemingly supporting his contention, that the amendment was not intended to merge, or otherwise preclude, recovery against the agent for the latter's own negligence. But the words of the statute express a broader purpose. Certainly on the present facts the language of the law is explicit in its denial to the libelant of a right of action against Moore-McCormack; it seems tailored to the present situation. Surely the omissions charged to Moore-McCormack occurred in its agency-ambit. The terms of the statute are so opposite and so uncompromising that they end discussion of the point.' "

■ Plaintiff's second contention is also without merit. Assuming *arguendo* that defendant's acts of sending the ship out on its voyage and ordering plaintiff to return to work were performed nonnegligently, plaintiff does not argue that either act would be outside the ambit of the agency relationship. Nor could it so argue, in view of Article 3, subheadings (a), (c), and (d) of the applicable general agency agreement (contract MA–49–GAA). The agreement provides that defendant was to conduct the business of the vessel in all matters, as agent for the United States and, as such, was to equip, victual, supply, and arrange for the repair of the vessel and supply a crew to man the vessel. The mere fact that certain acts otherwise clearly within the scope of the agency were perhaps performed negligently, does not take such acts outside the agency relationship. See Restatement of the Law of Agency, section 228, et seq.

Defendant's motion for summary judgment is granted.