Frank L. PETERMAN, Appellee,

v.

CHICAGO, ROCK ISLAND AND PA-
CIFIC RAILROAD COMPANY,
Appellant.

No. 74–1604.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1975.

Decided May 6, 1975.

Rehearing Denied May 28, 1975.

Certiorari Denied Oct. 6, 1975.

See 96 S.Ct. 133.

Bennett A. Webster, Des Moines, Iowa, for appellant.

Lloyd E. Humphreys and W. Howard Smith, Cedar Rapids, Iowa, for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

This railroad crossing collision case involves the so-called last clear chance doctrine, which has been viable in Iowa for nearly a century. See list of cases appended to Note, The Iowa Doctrine of Last Clear Chance, 34 Iowa L.Rev. 480, 495 (1949). A jury awarded plaintiff Frank L. Peterman $35,000 as damages for injuries he sustained when the converted school bus he was driving was struck by a train owned and operated by the appellant railroad company. The collision occurred at a railroad crossing near Tiffin, Iowa.[1]

## I  JURISDICTION

As its sole basis for obtaining post-verdict relief, the appellant filed a timely motion for judgment n. o. v. It did not file a motion for new trial pursuant to Rule 59, Fed.R.Civ.P., nor did it seek a new trial as an alternative form of relief to its motion for judgment n. o. v. as authorized by Rule 50(b), Fed.R.Civ.P.

The district court denied the appellant's motion for judgment n. o. v., but sua sponte ordered a new trial. These actions were taken more than 10 days after entry of judgment. See Rule 59(d), Fed.R.Civ.P. Thereafter, plaintiff filed a notice of appeal and a petition for writ of mandamus contending that the district court had exceeded its jurisdiction in granting the new trial. After a hearing, we held that the trial court did not have the power to grant sua sponte a new trial more than 10 days after the entry of judgment and issued the writ of mandamus vacating the order granting the new trial. See Peterman v. Chicago, R. I. & Pac. R. Co., 493 F.2d 88 (8th Cir.), cert. denied, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974).

After the Supreme Court's denial of certiorari and this court's subsequent filing of its mandate, the railroad company moved for entry of judgment on the jury's verdict. The district court formally entered the judgment and the railroad company appealed.

Plaintiff has opposed the appellant's appeal contending that the appellant filed its notice of appeal out of time and that, therefore, this court lacks jurisdiction. The parties exhaustively presented this jurisdictional issue in their briefs and at oral argument. All of the proceedings relating to the timeliness of the appeal have been considered in light of the applicable law. From our exploration of the issue, we are led to conclude that we are vested with jurisdiction to consider the merits of the appeal. See generally United States v. Williams, 508 F.2d 410 (8th Cir. 1974); United States v. Mills, 430 F.2d 526, 527–28 (8th Cir. 1970), cert. denied, 400 U.S. 1023, 91 S.Ct. 589, 27 L.Ed.2d 636 (1971). Accordingly, the plaintiff's motion to dismiss is denied.

## II  THE MERITS

The merits of this controversy concern whether plaintiff was entitled to recover under the Iowa last clear chance doctrine. In this respect, the railroad company raises two contentions on appeal. First, it asserts that the evidence was insufficient as a matter of law to warrant submission of the last clear chance doctrine to the jury. Secondly, it contends that the general verdict was inconsistent with the jury's answers to the district court's special interrogatories.

1. Jurisdiction is based on diversity of citizenship, and the requisite amount in controversy.

In its answers the jury found the plaintiff guilty of negligence that was a proximate cause of the injury. Consequently, the railroad company claims that the district court should have granted its motion for judgment n. o. v.

We consider these issues seriatim.

## A. SUFFICIENCY OF THE EVIDENCE

■ Under Iowa law, the last clear chance doctrine cannot be submitted to the jury unless the evidence is sufficient for the jury to find that the defendant (1) had knowledge of plaintiff's presence, (2) realized or by the exercise of ordinary care should have realized the plaintiff's peril, (3) had the ability to avoid the injury to the plaintiff, and (4) failed to avoid the injury. *See, e. g.,* Ackerman v. James, 200 N.W.2d 818, 827 (Iowa 1972); Albrecht v. Rausch, 193 N.W.2d 492, 495 (Iowa 1972); Duffy v. Harden, 179 N.W.2d 496, 501 (Iowa 1970). The appellant admits that the evidence was sufficient for the jury to find elements (1), (2) and (4). However, it asserts that the third element, the ability to avoid colliding with the plaintiff's vehicle, was not shown. *See* Albrecht v. Rausch, *supra.*

■ Specifically, appellant submits that there was no evidence that the train crew had sufficient time to avoid the collision after they knew or should have known that plaintiff was in a position of peril. In considering this position, we observe that our review of the district court's denial of a motion for judgment n. o. v. is severely limited: we must view the evidence in the light most favorable to the plaintiff as the party who prevailed below, giving the benefit of all favorable inferences to him. *See, e. g.,* Griggs v. Firestone Tire & Rubber Co., 513 F.2d 851 (8th Cir. 1975); Hanson v. Ford Motor Co., 278 F.2d 586, 596 (8th Cir. 1960).[2]

We do not propose to engage in an extended discussion of the evidence favorable to plaintiff. The transcript has been carefully scrutinized and we are in agreement with Judge Stuart's analysis thereof, which is shown in his memorandum opinion denying the motion for judgment n. o. v. As the district court stated in pertinent part:

> The Court is of the opinion that under the evidence presented, the jury could have found that the train crew saw the bus when the train was about 1000 feet from the intersection. That the bus stopped about 55 feet from the centerline of the railroad track and then proceeded forward in low gear to the point of the accident. A stop sign was attached to a railroad cross buck sign about 35 feet from the centerline of the track. The bus proceeded past the stop sign and cross buck at a speed of about six miles per hour. The train was traveling at a speed of about 55 miles per hour. No effort was made to slow the speed of the train until it was 25 to 100 feet from the crossing. The train hit the back four feet of the bus. The front of the bus would have had to travel 60 to 65 feet from the cross buck to the point of collision. This would have taken six or seven seconds and would have placed the train about 560 feet away from the crossing when the bus passed the cross buck. The engineer would have had six to seven seconds to slow the train down.

We add only that, in addition to these findings, the review of the transcript reveals that the jury could have found that the crossing was extremely dangerous, since a number of accidents had occurred at the crossing in the past, and that the train engineer knew of this hazardous condition.

■ In light of these facts, we can only conclude that the evidence was sufficient for the district court to submit

---

2. The Iowa courts follow this same standard of review. *See, e. g.,* Ackerman v. James, *supra,* 200 N.W.2d at 824; Lynch v. Des Moines Ry. Co., 215 Iowa 1119, 1122, 245 N.W.2d 219, 220 (1932), and cases cited therein.

the last clear chance doctrine to the jury. We cannot agree with the appellant that those Iowa cases that have allowed train crewmen to rely on the custom of travelers to drive up to the tracks before stopping require an opposite result.[3] The application of that custom is precluded by the particular facts in this case, which show that the engineer was aware that the crossing was hazardous and that the crewmen observed the plaintiff proceed into the crossing without stopping at the stop sign and cross bucks. *See* Tilghman v. Chicago & N.W. Ry. Co., 253 Iowa 1339, 1344, 115 N.W.2d 165, 170 (1962). *See also* Strom v. Des Moines & Cent. Iowa Ry. Co., *supra*, 248 Iowa at 1062, 82 N.W.2d at 787.

Under these circumstances, the following statement from Tilghman v. Chicago & N.W. Ry. Co., *supra*, 253 Iowa at 1346, 115 N.W.2d at 169–70, is convincing:

It was not necessary, in order to avoid the collision, to stop the train before it reached the crossing. If its speed had been reduced just a little or a little sooner plaintiff could have crossed the railroad track in safety. If the train had reached the crossing just one second later than it did this collision would have been avoided. At least the jury could properly so find. As it was, the truck [here bus] was partly across the track when it was struck without substantial reduction in the train's speed. * * *

The fact the trainmen may not have had time, after realization of plaintiff's peril, to stop the train does not prevent operation of the last clear chance doctrine where the evidence indicates that had they even checked the speed of the train it would have enabled plaintiff to clear the crossing.

Thus, as the district court held:

The jury could have found (1) the traincrew should have realized plaintiff did not know the train was approaching because he drove past the cross buck and (2) as reasonable men they should have, at that time, taken steps to slow down the train and (3) action at that time would have avoided the collision. Tilghman v. Railway, *supra* [253 Iowa], at 1347 [115 N.W.2d 165].

We therefore hold that the evidence was sufficient for the court to submit the last clear chance doctrine to the jury.

### B. JURY INSTRUCTIONS

Prior to delineating the elements of the last clear chance doctrine, the district court in the prelude to Instruction No. 21 informed the jury:

Even if you have found the plaintiff, Frank L. Peterman, guilty of negligence *which was a proximate cause of the collision* he might still recover under the doctrine of last clear chance.

(Emphasis supplied.) Special interrogatories were requested by the appellant. The district court, in response to the request drafted special interrogatories, which with the jury's answers are here set out:

### SPECIAL INTERROGATORIES

1. Was the defendant railroad company guilty of negligence which was the proximate cause of the collision and resulting injuries and damages?

Yes   X

No   .   .

2. Was the plaintiff guilty of negligence which was a proximate cause of the collision and resulting injuries and damages?

Yes   X

No   .   .

3. If the answer to the second interrogatory is yes, did the defendant railroad have the Last Clear Chance to avoid the collision?

Yes   X

No   .   .

---

3.   *See, e. g.,* Strom v. Des Moines & Cent. Iowa Ry. Co., 248 Iowa 1052, 82 N.W.2d 781 (1957); Arp v. Illinois Cent. R. Co., 230 Iowa 869, 299 N.W. 413 (1941); Williams v. Mason City & Ft. D. Ry. Co., 205 Iowa 446, 214 N.W. 692 (1927). *See also* Mast v. Illinois Cent. R. Co., 79 F.Supp. 149, 163 (N.D.Iowa 1948).

The instructions and the interrogatories make it apparent that the district court was of the view that even if plaintiff's negligence was a proximate cause of the collision, he could nevertheless recover upon the additional finding that the appellant railroad company had the last clear chance to avoid the collision. Appellant objected to the form of the instructions and interrogatories at trial, and it now vigorously contends that, under the latest pronouncement of the Supreme Court of Iowa in Ackerman v. James, *supra*, the plaintiff cannot recover since the trier of fact found that plaintiff's negligence was a proximate cause of his injury.

Our research indicates that for a number of years the Iowa authorities were split over the theory underlying the last clear chance doctrine. Some cases regarded the doctrine as an exception to the rule that contributory negligence is a complete bar to recovery. *See, e. g.,* Lynch v. Des Moines R. Co., 215 Iowa 1119, 245 N.W. 219 (1932); Keefe v. Chicago & N.W. R. Co., 92 Iowa 182, 60 N.W. 503 (1899). Other cases considered the doctrine as a phase of proximate cause. *See, e. g.,* Albrecht v. Rausch, *supra*, 193 N.W.2d at 495; Vreugdenhil v. Kunkel, 256 Iowa 460, 127 N.W.2d 630 (1964); Groves v. Webster City, 222 Iowa 849, 270 N.W. 329 (1936); Albrecht v. Berry, 202 Iowa 250, 208 N.W. 205 (1926).[4]

The difference in theories was resolved and the dispute laid to rest in the *Ackerman* case, where the Supreme Court of Iowa, in quoting Justice Brennan, then a Justice of the New Jersey Supreme Court,[5] explicitly held that:

"[T]he best considered decisions properly catalogue the alleged last clear chance doctrine as simply an application of the principle of proximate cause."

200 N.W.2d at 829.[6]

In the process of delineating the proximate cause theory, the *Ackerman* Court borrowed extensively from Justice Brennan's decision in *Pangborn*. The *Ackerman* Court was influenced by the following language from *Pangborn*:

* * * The question with respect to negligent conduct on the part of the person injured through the negligence of another as affecting the former's right to recover thus becomes resolved in every case into one as to whether or not that conduct of his was a proximate cause of the injury. If it was, then the contributory negligence rule is applicable, and the plaintiff will by its operation be barred from recovery. * * * It follows that the decisive question, in each case where a plaintiff injured is found to have been at fault in the premises from his failure to exercise the required degree of care, resolves itself into one as to whether that fault was or was not a proximate cause of the injury, and that the answer to that question will infallibly determine whether or not it will bar a recovery.

18 N.J. at 101, 112 A.2d at 714, *quoted in Ackerman, supra,* 200 N.W.2d at 830.

With these considerations in mind, the *Ackerman* Court held:

---

4. The author of the Note, The Iowa Doctrine of Last Clear Chance, in 34 Iowa L.Rev., *supra* at 481, observes:

   Despite the large number of cases in which the Iowa Supreme Court has addressed itself to the last clear chance doctrine, its basis and legal theory is not at all settled. Parallel lines of authority support two theories. One line bottoms the doctrine on the theory of proximate cause. [Citing cases.] * * * The other line of authority views the doctrine as an exception to the contributory negligence rule. [Citing cases.]

5. Quote from Pangborn v. Central R. Co. of New Jersey, 18 N.J. 84, 101, 112 A.2d 705, 713 (1955).

6. The *Ackerman* Court also held that the viability of the last clear chance doctrine was not affected by the recent amendment to § 619.17 of the Iowa Code Annotated, which now places on the defendant the burden of proving that the plaintiff was guilty of contributory negligence, whereas previously the plaintiff was required to prove freedom from contributory negligence.

We hold in a personal injury case where the injured party has alleged facts essential to the application of the doctrine of last clear chance as a theory of recovery evidence relating to those facts is admissible as relevant to a determination of the issue of proximate cause. This is so whether the issue relates to defendant's negligence being a proximate cause of plaintiff's injury or to plaintiff's negligence being a bar to his recovery . . ..

It would follow that if the trier of fact finds plaintiff's negligence was a proximate cause of his injury, he cannot recover. On the other hand, a finding that defendant's negligence was the *sole* proximate cause of the injuries would be justified where such trier finds plaintiff's negligent conduct placed him in a position of peril and further finds defendant, with knowledge of plaintiff's presence on the highway, failed to use ordinary care in exercising the ability at his command to avoid striking plaintiff after he realized or in the exercise of ordinary care should have realized the plaintiff's perilous position.

200 N.W.2d at 830.

Confronted with the Iowa Supreme Court's unequivocal pronouncement, we are not persuaded by plaintiff's argument that the answers to the special interrogatories should be read to mean that the jury found that appellant's negligence was the *sole* proximate cause of the collision. However, we also are not convinced by the railroad company's argument that the jury's affirmative answer to Special Interrogatory No. 2 requires a holding that the plaintiff cannot recover. Since Instruction No. 21 and the special interrogatories were not phrased in the theory of proximate cause, legal conclusions based on the holding in *Ackerman* cannot apply. Thus the dichotomous interpretations that the answers to the special interrog-

atories can be given make it impossible for us to determine the jury's state of mind.

Judge Stuart, who presided over the trial of this case, was equally troubled over the phraseology of the instructions and the special interrogatories. In his memorandum denying appellant's motion for judgment n. o. v. and sua sponte granting a new trial, Judge Stuart stated:

> It is therefore apparent that instructions 21 and 22 contain erroneous statements of the law and that under the correct law the general verdict is contrary to the jury's answer to interrogatory number 2.
> * * * It would not be fair or in the interest of justice to grant a judgment NOV because of the conflict between the general verdict and the special interrogatory in view of the erroneous instructions given. More properly the jury should have been told that plaintiff could recover even if he had been negligent if defendant's negligence intervened between his negligence and the collision and became the sole proximate cause thereof.[7]

Therefore, we hold that the case was improperly submitted since the law, as established in *Ackerman*, was not properly delineated.

### III REMEDY

We are convinced that even though the instructions and the special interrogatories were erroneous, the district court did not err in denying the appellant's motion for judgment n. o. v. Rather, we agree with the appellant that we should grant alternative relief by remanding the case for a new trial. Rule 50(d), Fed.R.Civ.P., does not prohibit this court from taking this action. Indeed, the rule provides: "If the appellate court reverses the judgment, nothing in this rule precludes it from determining that appellee is entitled to a new trial, or

---

7. Unfortunately, the granting of the new trial by the district court on its own initiative was

untimely. This precipitated the mandamus proceeding.

from directing the trial court to determine whether a new trial shall be granted." *See* Slaughter v. Philadelphia National Bank, 417 F.2d 21, 33 n.22 (3d Cir. 1969). *See also* Neely v. Eby Construction Co., 386 U.S. 317, 323–324, 329, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). *Cf.* Weade v. Dichman Co., 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704 (1949).

Inasmuch as the district court has previously determined that the case should be retried, we decline to remand to permit that court to again decide the question. We conclude that in the interest of justice the judgment of the district court should be vacated and the cause remanded to the district court for a new trial under appropriate instructions.

The costs shall be taxed equally between the parties. It is so ordered.