Joseph ERWIN, Brenda Erwin, Katrina Erwin, Debra Laier, James Laier, Rowena Oclon, Joseph Oclon, Clifton Oclon, and Matthew Oclon, Plaintiffs–Appellants, Cross–Appellees,

v.

COUNTY OF MANITOWOC; Larry Conrad, Timothy O'Hearn, Richard Tisler, and Richard Roe, all individually and in their official capacities as officers of the County of Manitowoc; and Tom Kocourek, individually and as Sheriff of the County of Manitowoc, Defendants–Appellees,

and

Timothy O'Hearn, Cross–Appellant.

Nos. 88–1211, 88–1263.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1988.

Decided April 19, 1989.

Stephen J. Eisenberg, Eisenberg Law Office, S.C., Madison, Wis., for plaintiffs-appellants, cross-appellees.

Jonathan M. Menn, Menn Nelson Sharratt Teetaert & Beisenstein, Ltd., Appleton, Wis., for defendants-appellees.

Before CUMMINGS, POSNER, and MANION, Circuit Judges.

MANION, Circuit Judge.

Plaintiffs sued defendants under 42 U.S.C. § 1983 for civil rights violations and for damages resulting from a police search of a private residence. Plaintiffs claim that several deputies violated their Fourth Amendment rights by engaging in an unreasonable search and seizure and using excessive force and also violated the Fourteenth Amendment by depriving plaintiffs of property without due process of law. They also claim that the County inadequately trained its officers in executing search warrants of private residences. The jury awarded plaintiffs compensatory and punitive damages amounting to $85,000, most of which the district court vacated on the defendants' motion for judgment notwithstanding the verdict. We reverse the district court and remand for a new trial.

I.

A Manitowoc County, Wisconsin circuit judge issued a search warrant to the County Sheriff's Department authorizing a search of the residence of Joseph and Brenda Erwin to locate four stolen pressure cookers and four ounces of marijuana. On August 30, 1984, the county sheriff's Special Operations Squad (SOS), consisting of Sergeant Richard Tisler, Officer Timothy O'Hearn and Officer John Felber, executed the search warrant. Upon entering the residence, Sergeant Tisler served the warrant upon Brenda Erwin. The other two officers moved quickly through the house to secure it. In that process, Officer O'Hearn encountered one of several of the families' dogs, a German shepherd, and shot and killed it, allegedly in self-defense.

When the officers entered the house they were wearing camouflage uniforms. The record does not disclose who or what the officers expected to find (other than the pressure cookers and the marijuana). But the only people present when the officers entered were Brenda Erwin, her sister, Rowena Oclon, several young children in-

cluding Brenda Erwin's daughter, Debra Laier, and the children's elderly grandfather. After the house was "secured" the dog was dead, the children and the adults were screaming, and the officers found no pressure cooker or marijuana.

The plaintiffs make several allegations that the defendants strongly dispute. Plaintiffs claim that the officers barged in without knocking or warning, that one of the officers (probably Felber, since deceased) hit Brenda Erwin in the mouth with his gun butt, and that Officer O'Hearn needlessly shot and killed the dog during the confrontation. The defendants, on the other hand, claim they knocked before entering and issued the normal warning, and deny that anyone hit Brenda Erwin. Officer O'Hearn admitted that he shot the dog, but he claims the dog was attacking him and he shot in self-defense.

At trial all the adults present in the household and the surviving officers testified. In addition to complaining about the methods and the results of the search itself, the plaintiffs also alleged that Manitowoc County was grossly negligent in failing to train its deputy sheriffs in the manner in which search warrants must be executed.

At trial there was psychiatric testimony for plaintiffs by Dr. Robert Gale concerning damage incurred by Brenda Erwin and Debra Laier. Also, plaintiffs' expert witness Robert di Grazia testified that the training of the SOS had been insufficient. Conflicting testimony was taken from Officer O'Hearn and from a veterinarian concerning the manner in which O'Hearn had shot the dog.

As damages, the Erwins claimed the value of the dog. In addition, however, they relied on the evidence of severe psychological damage to the various plaintiffs as a result of the method of entry, the conduct of the search, and the impact as a result of the killing of the dog. At the conclusion of trial, the judge prepared a form of jury verdict containing a number of questions and, depending on the answers to those questions, several other questions regarding damages. (The complete verdict form and the answers provided by the jury are set forth in the appendix to this opinion.) The issues on appeal focus on the form of verdict, the conflicting questions in that form, and the seemingly inconsistent answers and award of damages by the jury.

The jury first found that the officers of the Manitowoc County Sheriff's Department did *not* act unreasonably in the manner in which they carried out the search of the Erwin home. However, the jury did find that Timothy O'Hearn acted unreasonably in shooting the dog. Although they found the manner of the search reasonable, the jury nevertheless found that Manitowoc County was grossly negligent in failing to train its deputy sheriffs in the manner in which search warrants may be executed. They also found that there was an affirmative link between the failure to properly train the deputy sheriffs and the injuries that were sustained by the plaintiffs.[1]

The jury concluded that Brenda Erwin and Debra Laier suffered injuries as a result of the failure of Manitowoc County to properly train its deputy sheriffs. The jury awarded Joseph and Brenda Erwin $600 as compensation for the loss of their dog. As compensation for failure of the County to properly train its deputy sheriffs, the jury awarded Brenda Erwin $35,-000 and Debra Laier $10,000. In addition, the jury awarded punitive damages to only Brenda Erwin and Debra Laier as follows: against Detective Larry Conrad $15,000; against Deputy Timothy O'Hearn $5,000; against Deputy Richard Tisler $5,000; and against Manitowoc County Sheriff Tom Kocourek $15,000.

The defendants moved for, among other things, judgment notwithstanding the verdict, and for a new trial. The judge denied the motion for a new trial. He also denied the j.n.o.v. with regard to the $600 damages for the loss of the dog and the $5,000 punitive damages against Timothy O'Hearn, who had shot the dog. However, because of the inconsistencies between the

---

1. The jury found that no Manitowoc officer had intentionally struck Brenda Erwin in the face.

jury's answers to the questions on the verdict form and the damages awarded, the district court granted the remaining defendants' motion j.n.o.v., thus vacating the balance of the damages awarded. Plaintiffs appeal from the district court's partial grant of the j.n.o.v., and Officer O'Hearn appeals from the denial of the motion as it applied to damages against him.

The district court considered only the defendants' motions for a new trial and for j.n.o.v., viewing the evidence as a whole in the light most favorable to the nonmoving party-plaintiffs. The primary problem with the verdict as reviewed by the district court was the award of punitive damages against Conrad, Tisler, and Kocourek, against whom no liability had been found. Because the jury had found that the officers did not act unreasonably in searching the Erwin home, the district court likewise found it impossible to sustain the jury determination that the County had been grossly negligent in failing to train its officers. The trial judge sustained only the damages in the amount of $5,600 against O'Hearn, denying him a new trial.

## II.

At issue in this case is whether the district court properly granted the defendants' motion for j.n.o.v. In reviewing a district court's decision to grant j.n.o.v. under Fed.R.Civ.P. 50(b), we (as did the trial judge) examine the evidence in a light most favorable to the prevailing parties. *Selle v. Gibb*, 741 F.2d 896, 900 (7th Cir.1984). To determine whether there is substantial evidence to support the verdict, we need to examine whether the evidence presented, when combined with all reasonable inferences which may derive from it, was sufficient to support the verdict. *Steffen v. Meridian Life Insurance Co.*, 859 F.2d 534, 546 (7th Cir.1988).

"This evidence must provide a sufficient basis from which the jury could have reasonably reached a verdict without speculation or drawing unreasonable inferences which conflict with the undisputed facts." *Selle*, 741 F.2d at 900. Our review in this case is complicated by the seeming incon-sistencies between the jury's findings and its award of damages. The evidence and the verdict which flowed from the evidence support several distinct yet conflicting scenarios revolving around Questions 4, 8, and 9 of the jury form. (We again note that each question and answer in the form of verdict is completely set out in the appendix following this opinion.)

The amended complaint of January 6, 1987, alleging a violation of 42 U.S.C. §§ 1983 and 1988, charged defendants with conducting an unreasonable search and seizure in violation of the Fourth Amendment, the use of excessive force in violation of the Fourth Amendment, and deprivation of property without due process of law in violation of the Fourteenth Amendment. The complaint also alleges that Manitowoc County had inadequately trained its officers. In *Sherrod v. Berry*, 856 F.2d 802 (7th Cir.1988) (en banc), we applied an "objective reasonableness" standard to Fourth Amendment excessive force in arrest claims. The objective reasonableness standard demands that a trier of fact weigh the totality of the facts and circumstances known to an officer at the time of his actions in determining whether those actions were objectively reasonable. *Id.* at 804–05. In applying this standard we will examine the facts as presented and attempt to reconcile them with the jury's verdict. First, however, we will set out the conflicting scenarios as seen by the plaintiffs-appellants, the defendants-appellees and the district court.

*Appellants' scenario.*

From the appellants' point of view the jurors, when addressing Question 4, properly found Manitowoc County negligent because they reasonably could have believed O'Hearn acted unreasonably due to his poor training by the County, thus causing the plaintiffs' injuries. Appellants justify the combined award of $45,000 punitive damages (Question 8) by emphasizing that Brenda Erwin and Debra Laier were the only two plaintiffs of whom there had been undisputed expert psychiatric testimony regarding emotional injuries resulting from the search of the home. Appellants argue

that the evidence supports the jury's conclusion that Brenda Erwin and Debra Laier suffered injuries as a result of O'Hearn's shooting of the dog, because the shooting was the result of grossly negligent training by the Sheriff's Department. Appellants also argue that the officers whom the jury charged with punitive damages under verdict Question 9 could have been found liable for a part they had played in failing to adequately train the Special Operations Squad and thus causing the deprivation suffered by the Erwins in O'Hearn's shooting of the dog.

Finally, appellants claim that since liability for compensatory (unlike punitive) damages is joint and several, the jury should not have been asked to assess compensatory damages against each defendant individually.[2] Appellants assert this legal principle even though the jury concluded that O'Hearn acted unreasonably when he shot the dog but at the same time concluded that the sheriff's department (presumably the other deputies) did not act unreasonably in the search.

*Appellees' scenario.*

Appellees contend that even if the County was grossly negligent for failing to train its deputy sheriffs, the training (or lack thereof) did not damage Brenda Erwin and Debra Laier because the jury found that the search was reasonable. Erwin and Laier claim that O'Hearn's shooting the dog caused emotional damages that are separate from any effect of a reasonable search. But appellees claim that there was no damage testimony that separated the search from the shooting; thus, the punitive damages assessed against Conrad, Kocourek, and Tisler were unfounded. Since the jury did not attribute the training failure to any of them, the punitive damage awards were speculative and improper.

*The district court's scenario.*

The judge divided his decision on the motion for j.n.o.v. He upheld the $600 in compensatory damages and the $5,000 in punitive damages awarded against O'Hearn. He thought it was a close question on the law of qualified immunity and on the facts of whether O'Hearn acted with malice or callous disregard of the plaintiff's rights when he shot the dog or whether he shot in self-defense. But he did sustain that part of the verdict.

The district court set aside the $35,000 award to Brenda Erwin and the $10,000 award to Debra Laier. He also set aside the punitive damages in their favor and against Larry Conrad ($15,000), Richard Tisler ($5,000), and Tom Kocourek ($15,000). He cited several problems that focused on the inconsistency in the jury verdict. Most glaring, he thought, was the jury's award of punitive damages against Conrad, Tisler and Kocourek when no liability was found against them personally. Since the jury found that the search was reasonable and that no officer intentionally struck Brenda Erwin, the three men could not have been responsible for any compensatory damage. The trial judge stated that "Even if—as the plaintiffs seem to argue—the jury felt that Conrad, Tisler, and Kocourek were the officers who were affected by Manitowoc County's inadequate training and thus caused the injuries resulting from what the jury saw as inadequate training, the punitive damages must fall." He concluded that the County, not the officers, could be the only responsible party, and a county cannot be held liable for punitive damages. Also, since the jury found that this particular search was reasonable, the plaintiffs lack standing to raise their claims. Since the search was reasonable, there was no link between the inadequate training and the damage. It would take a plaintiff who was subjected to an improper search to raise the claim.

*Appeal of Officer O'Hearn.*

Officer O'Hearn claims that if he participates in a reasonable search he cannot be personally liable for damages if he reason-

2. See *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir.1987) where we stated:

   In the case of a single injury the jury should be asked to determine the amount of the plaintiff's loss, which then becomes a joint and several liability of the defendants who inflicted it ... *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1387 (7th Cir.1984). Only punitive damages should be assessed separately.

ably believed that his safety was being threatened when he shot and killed a dog. He stresses the trial court considered it a very close issue. But it was a fact question that the jury and then the trial judge found against him, and we will not disturb that conclusion.

Appellants meanwhile attempt to extend O'Hearn's liability to the other officers and to the County. Appellants assert that the four deputies (including O'Hearn) against whom punitive damages were awarded were found liable for the part they had played in failing to adequately train the Special Operations Squad. Appellants suggest the trial court never should have permitted jurors to assess compensatory damages against individual defendants because all the defendants could have been jointly liable for all of the damages. Appellants also argue that the County is liable because the jury could have believed O'Hearn, due to poor County training, injured them by shooting the dog.

### III.

While there may be conflicting interpretations of the evidence presented, the real source of the problem here is the confusing form of verdict. It is against the background of that incoherent verdict form that we examine the law in this case.

*Liability of Manitowoc County.*

Both sides cite *Monell, et al. v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) in support of their claims and denials. *Monell* permitted a plaintiff to sue a local government for damages if the government had established a policy or permitted a custom depriving a person of a constitutional right. *Tuttle* essentially followed *Monell* with some limitations as noted below. The Supreme Court held on February 28, 1989, that under certain circumstances a municipality can be liable under § 1983 for constitutional violations resulting from its failure to train municipal employees. *Canton v. Harris,* — U.S. ——, ——, 109 S.Ct. 1197,

1200, 103 L.Ed.2d 412 (1989). The confusing verdict in this case makes it difficult to apply the appropriate law since arguably these authorities will support both the appellants' and the appellees' conflicting interpretations of the verdict.

■ Proper application of the *Monell* teachings is closely keyed to the litigants' fact-pattern. As Justice Brennan explained, *Monell* allows a person to sue a local government for damages where a local government establishes a policy or permits a custom which deprives a person of a constitutional right. 436 U.S. at 690–91, 98 S.Ct. at 2035–36. The suit against Manitowoc County demonstrates the importance of clear jury conclusions of whether challenged actions (such as this search or shooting and the training beforehand) in fact represented a "policy" or official "decision." Under *Monell,* the jury must be able to conclude that the challenged actions resulted from at least an informal governmental "custom."

*Tuttle* requires at least an affirmative link between the governmental policy and the specific constitutional violation alleged. The jury instructions in *Tuttle* had allowed jurors to infer from a single incident a nebulous "policy" of "inadequate training" on the part of a municipal corporation. The *Tuttle* jury instructions likewise allowed the jury to infer that such "policy" had caused that incident. The Supreme Court reversed, finding that such approaches circumvented *Monell's* limitations altogether. It held that proof of a single instance of unconstitutional activity was insufficient to attach liability under *Monell,* absent proof that the incident had been caused by an existing, unconstitutional municipal policy attributable to a municipal policymaker. *Tuttle,* 471 U.S. at 823–24, 105 S.Ct. at 2436.

■ Only in limited circumstances can the allegation of a "failure to train" provide the basis for § 1983 liability. *Harris,* — U.S. at ——, 109 S.Ct. at 1204. The inadequacy of police training serves as a § 1983 liability basis only if the failure to train amounts to "deliberate indifference"

to the rights of persons with whom the police deal. The training failure must evidence this "deliberate indifference" to the rights of the citizenry for the shortcoming to properly constitute an actionable § 1983 "policy or custom."

The liability only attaches if a deliberate choice to embark upon a course of action is made by policymakers from among various alternatives. For the § 1983 failure in training to constitute actionable "policy," this failure to train must reflect deliberate or conscious choice. *Id.* A § 1983 claim based on the due process clause of the Fourteenth Amendment does not translate every tort committed by a state actor into a constitutional wrong. *DeShaney v. Winnebago County Department of Social Services,* —— U.S. ——, ——, 109 S.Ct. 998, 1007, 103 L.Ed.2d 249 (1989). It may happen that in view of the duties assigned to specific officers the need for enhanced training is so obvious, and the inadequacy of training is so likely to result in the violation of constitutional rights, that a jury could reasonably attribute to the policymakers a deliberate indifference to those training needs. *Harris,* —— U.S. at ——, 109 S.Ct. at 1204–05. It is in such cases that the failure to offer proper training constitutes a policy for which a defendant is liable when improper training actually imposes injury. *Id.* at ——, 109 S.Ct. at 1205.

> *Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy."

*Id.* at ——, 109 S.Ct. at 1205 (footnote omitted).

A particular officer's unsatisfactory training cannot alone suffice to attach liability to the state. An officer's faults (e.g., O'Hearn's) may result from factors other than the deficient training program. *Id.* at ——, 109 S.Ct. at 1205–06. Nor can plaintiffs prevail merely by proving that an accident or injury could have been avoided had an officer received enhanced training forestalling the particular conduct resulting in the injury. Even adequately trained officers sometimes err, and such error says little about their training program or the legal basis for liability. After all, in almost every instance where a § 1983 plaintiff has suffered a violation of his constitutional rights by a government employee the plaintiff can point to something the government could have done to protect against that unfortunate incident. This is why claims alleging a constitutional deprivation due to failure to provide training to employees are cognizable under § 1983, and yield liability, only if that defendant's failure to train demonstrates its "deliberate indifference" to the constitutional rights of its residents. *Id.*

Before applying the principles of *Monell,, Tuttle* or *Harris,* we must first clearly understand the facts. But the findings in the verdict form impede this necessary understanding. Given these findings we can only speculate whether the training was inadequate, let alone whether such training was a "policy" or accepted "custom." *Cf. Parker v. District of Columbia,* 850 F.2d 708, 712 (D.C.Cir.1988). Thus we are unable at this point to review whether the County could have been liable.

Here, plaintiffs must prove that Manitowoc County's allegedly deficient training program actually caused the claimed constitutional violation. Would the wrong have been avoided had the officers been properly trained? Prediction of how a properly trained officer would have performed under these circumstances will be difficult for the trier of fact. An officer must make on-the-spot judgments under pressure. Even properly trained officers can err and might react much like a similarly challenged, untrained officer. But difficult as that determination may be, as the Supreme Court notes, the "judge and jury,

doing their respective jobs, will be adequate to the task." *Harris,* —— U.S. at ——, 109 S.Ct. at 1206.

*Liability of Conrad, Kocourek, and Tisler.*

■ The jury awarded punitive damages to Brenda Erwin and Debra Laier as punishment to Conrad, Kocourek, and Tisler for their conduct. The trial court questioned the punitive damages because the jury found no compensatory damages against the three defendants who were charged. A jury may award punitive damages against persons in § 1983 actions when it finds conduct motivated by evil intent or involving reckless or callous indifference to the federally-protected rights of others. *Smith v. Wade,* 461 U.S. 30, 45–49, 103 S.Ct. 1625, 1634–37, 75 L.Ed.2d 632 (1983).

■ The question remains whether punitive damages can be awarded when the jury has awarded no compensatory or at least nominal damages to a particular plaintiff. Punitive damages (as awarded here) are applicable even in the absence of actual damages, *Sahagian v. Dickey,* 827 F.2d 90, 100 (7th Cir.1987); *McKinley v. Trattles,* 732 F.2d 1320, 1326 (7th Cir.1984), despite local law to the contrary. *Wilson v. Taylor,* 658 F.2d 1021, 1033 (5th Cir.1981). Although state law may not allow punitive damages without a compensatory award, under federal law, when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages even when it does not award compensatory damages. The scope of punitive damages in § 1983 actions is governed by the "federal common law of damages" which imposes uniformity when enforcing the Civil Rights Acts. *Lenard v. Argento,* 699 F.2d 874, 897 (7th Cir.1983); *Basista v. Weir,* 340 F.2d 74, 87 (3d Cir.1965).

■ The judge further questioned the punitive damages award against Conrad, Kocourek and Tisler because it appeared that the jury imputed to them the County's liability for their inadequate training. He reasoned that in such a situation the County, not the officers, would be the responsible party. On a custom and policy claim a *governmental body* such as the County cannot be held liable under 42 U.S.C. § 1983 for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Presumably the punitive damages were targeted at the individual officers, but the facts as we know them do not disclose how officers who conducted a reasonable search deserve punitive damages for having been grossly and negligently trained.

Because clear factual findings are required in order to review punitive damages under the law, we are unable to conclude the punitive damages issue at this juncture. Even if we had a complete set of facts, it is not clear under *Wade* to what extent the individual officers might be held liable for damages. Likewise, it is not clear under *Monell* and *Harris* what facts would be necessary to prove damages under the custom and policy claim. From what we can ascertain, given the reasonable search, there is no apparent evidence of a constitutional violation by these officers that merits punitive damages. But these uncertainties are best resolved by the district court.

These factual gaps are too wide to allow this court to attempt to construe what the jury intended and for what reasons. While a new trial may be more than any of the litigants desire, it appears to be the only way this confusing result can be reconciled in a way that will be fair to all concerned.

*Liability of O'Hearn.*

O'Hearn presents us with a difficult question. He claims the verdict finding that the overall search was reasonable conflicts with the finding that he acted unreasonably in shooting the dog. He encountered the dog in the process of the "reasonable" search, and he shot it when, as he saw it, his safety was threatened. Although the issue of self-defense is a question of fact, one we normally leave to the jury, whether the two findings by the jury are in conflict is a question of law. We could isolate the shooting from the search and presume the jury decided the matter

independently.[3] Given the total verdict and the confused result, the fairest outcome for all parties is to provide a new trial on all issues, especially now that the Supreme Court in *Canton v. Harris* has elaborated on the standard for liability resulting from the County's failure to adequately train. O'Hearn should be included in a trial under these new guidelines. Also, to isolate the O'Hearn incident and subtract it from the new trial may completely change the complexion of the case for all other parties and claims, to no one's particular advantage. We conclude the best, if not the perfect, result is to start from the beginning and ensure that all parties have their proper day in court.

## IV.

*New Trial.*

Given all of the foregoing and upon our review of the record, it is clear to this court that the jury concluded that liability properly attached to some defendants. Nevertheless, the confusing jury form and the conflicting answers do not sufficiently disclose the jury's intent. While a new trial producing clear findings of fact is the fair alternative in this case, we still need to examine whether it is procedurally appropriate as well.

Defendants below moved for a j.n.o.v. pursuant to Fed.R.Civ.P. 50(b). The defense also moved for a new trial. Must plaintiffs, who at first had apparently won but whose trial judge has granted a defense motion for j.n.o.v., themselves move for a new trial before this court can grant it?

■ If a trial court has granted a motion for j.n.o.v. but no motion for new trial has been made, and the appellate court as here reverses the entry of j.n.o.v., the court of appeals may order a new trial. *Derr v. Safeway Stores, Inc.*, 404 F.2d 634, 639–40 (10th Cir.1968); C. Wright & A. Miller, *supra*, § 2540, at 614; J. Moore & J. Lucas, 5A *Moore's Federal Practice* § 50.14, at 50–106 (2d ed.1988). Too, when a trial judge has denied a motion for j.n.o.v. and the appellate court affirms this denial, the court of appeals can then order a new trial upon its own motion. *Peterman v. Chicago, Rock Island & Pacific R.R.*, 516 F.2d 328, 333–34 (8th Cir.1975); J. Moore & J. Lucas, *supra*, at § 50.15, 50–108 n. 2.

In *Crossman v. Trans World Airlines*, 777 F.2d 1271, 1276–77 (7th Cir.1985), this court reversed the denial of a motion for j.n.o.v. vacating a jury award of damages. We then considered whether any grounds existed that could warrant a new trial. We reviewed the trial record even though the plaintiff Crossman had failed to request a new trial in the event this court reversed the district court. In that case we chose not to order a new trial.

■ In this case the plaintiffs also won. Although the plaintiffs did not conditionally move for a new trial in the event the j.n.o.v. was granted, at oral argument plaintiffs' counsel assured this court that a new trial was certainly preferable to our affirming the j.n.o.v. We thus conclude that the law of this circuit permits a new trial under these circumstances.

We therefore remand for a new trial for all parties concerned. Circuit Rule 36 shall apply.

REMANDED.

## APPENDIX

The verdict form presented by the trial court provided in relevant part:

### VERDICT
### Part A—Claims

(1) Did the officers of the Manitowoc County Sheriff's Department act *unreasonably* in the manner in which they carried out the search of the Erwin home?

---

**3.** The jury's finding the County grossly negligent in training its deputies and then linking the poor training to the plaintiff's injuries makes it very difficult to separate the training from the jury's conclusion that O'Hearn acted unreasonably when he shot the dog.

Answer:

    _____ yes

    __X__ no

(2) Did Deputy Timothy O'Hearn act *unreasonably* in shooting the dog?

    Answer:

    __X__ yes

    _____ no

(3) Did a Manitowoc officer intentionally strike Brenda Erwin in the face?

    Answer:

    _____ yes

    __X__ no

(4) (a) Have the plaintiffs proved that Manitowoc County was grossly negligent in failing to train its deputy sheriffs in the manner in which search warrants may be executed?

    Answer:

    __X__ yes

    _____ no

(b) If you have answered "yes" to question 4(a), then answer this question: Have the plaintiffs proved that an affirmative link exists between the failure to properly train its deputy sheriffs and any injuries sustained by any of the plaintiffs?

    Answer:

    __X__ yes

    _____ no

(c) If you have answered "yes" to question 4(b), then answer this question: Which plaintiffs suffered injuries as a result of the failure of Manitowoc County to properly train its deputy sheriffs?

    Brenda Erwin

    Debra Laier

## Part B—Damages

You should only answer these questions if you have answered "yes" to one or more of the following questions in Part A of this verdict: Questions 1, 2, 3, or 4(b).

(5) If you have answered "yes" to question 1, then answer this question:

(a) Which officers acted unreasonably in carrying out the search?

(b) What sum of money should be awarded to the following plaintiffs who you find sustained damages as a result of the unreasonable search to fairly and adequately compensate them for the violation of rights found in question 1?

Brenda Erwin $_____
Joseph Erwin $_____
Debra Laier $_____
James Laier $_____
Katrina Erwin $_____
Rowena Oclon $_____
Joseph Oclon $_____
Clifton Oclon $_____
Matthew Oclon $_____

(6) If you have answered "yes" to question 2, then answer this question: What sum of money should be awarded to Joseph and Brenda Erwin to fairly and adequately compensate them for the loss of their dog?
$600.00

(7) If you have answered "yes" to question 3, then answer this question:

(a) What officer struck Brenda Erwin in the face?
_____

(b) What sum of money should be awarded to Brenda Erwin to fairly and adequately compensate her for injuries she received from being struck in the face?
$_____

(8) If you answered "yes" to question 4(b), then answer this question: As to those plaintiffs that you have named in your answer to question 4(c), what sum of money will fairly and reasonably compensate them for damages sustained as a result of Manitowoc County's grossly negligent training of its deputy sheriffs?

$35,000 awarded to Brenda Erwin
$10,000 awarded to Debra Laier
$_____ awarded to _____
$_____ awarded to _____
$_____ awarded to _____
$_____ awarded to _____
$_____ awarded to _____
$_____ awarded to _____

(9) Answer this question only if you have found and awarded compensatory damages in any of your answers to questions 5, 6, 7, or 8.

(a) Should punitive damages be awarded to punish any of the individual defendants for their conduct?

Answer:
  X  yes

_____ no

(b) If you have answered "yes" to question 9(a), then answer this question: As to what officers and as to what amounts should the punitive damages be assessed?
Against Larry Conrad    in the amount of $15,000

Against <u>Timothy O'Hearn</u> in the amount of $5,000
Against <u>Richard Tisler</u>    in the amount of $5,000
Against <u>Tom Kocourek</u>    in the amount of $15,000
Against _____ in the amount of $_____
Against _____ in the amount of $_____

(c) If you have awarded damages in question 9(b), to whom should those damages be awarded and to what amounts?

To <u>Brenda Erwin</u> for $25,000
To <u>Debra Laier</u>    for $15,000
To _____ for $_____
To _____ for $_____
To _____ for $_____
To _____ for $_____
To _____ for $_____
To _____ for $_____
To _____ for $_____

<u>Sharon A. Ramage</u>
Foreperson

Dated: <u>September 24, 1987</u>