Lesallan
**DOCKERTY–BOSTRON,[1] Plaintiff,**

v.

**WAUKESHA COUNTY, Waukesha County Sheriff's Department, Sheriff Raymond J. Klink, Jail Administrator William Conine, John Doe, Richard Roe, Deputies/Employees With the Waukesha County Sheriff's Department, Defendants.**

No. 89–C–1473.

United States District Court,
E.D. Wisconsin.

Aug. 1, 1990.

---

1. The plaintiff notified the Clerk of Court that on April 23, 1990, in the Circuit Court of Waukesha County, he changed his surname from "Dockerty" to "Bostron". *See* Letter from Lesallan Bostron to Sofron B. Nedilsky, Clerk, United States District Court (received April 26, 1990).

878

Lesallan Dockerty–Bostron, Plymouth, Wis., pro se.

Steven R. Schmitz, Asst. Corp. Counsel, Waukesha, Wis., for defendants.

## OPINION AND ORDER

CURRAN, District Judge.

Lesallan Dockerty–Bostron, a prisoner in state custody, is seeking monetary relief

2. The plaintiff, who is proceeding *pro se* and *in forma pauperis,* is suing Sheriff Klink and jail administrator Conine in both their personal and official capacities.

3. Dockerty–Bostron says that he does not disagree with the defendants' version of events, but maintains that it is not complete. *See* Brief of

pursuant to 42 U.S.C. § 1983 from Waukesha County (Wisconsin), the Waukesha County Sheriff's Department, Sheriff Raymond Klink, Jail Administrator William Conine,[2] and unnamed sheriff's deputies and employees of the Waukesha County Sheriff's Department. Dockerty–Bostron claims that, while he was in pretrial detention in the Waukesha County Jail, he was denied adequate medical treatment. For this, he believes he is entitled to $50,000.00 in compensatory damages and $100,000.00 in punitive damages.

The defendants answered the complaint and, after the time for the completion of all discovery had passed, they moved for summary judgment on the grounds that there are no material issues of fact in dispute and that they are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c). The plaintiff has filed his response, so this matter is now ready for decision.

### I. FACTS

The defendants have compiled a narrative version of the facts material to Dockerty–Bostron's claim which the court finds to be supported by the record.[3] The defendants state that:

The plaintiff was arrested on a burglary charge on June 21, 1987, taken to a hospital and then taken to the Waukesha County Jail. During the time he was at the Jail, the written policy of Waukesha County, its Sheriff's Department and Jail regarding medical treatment for inmates was contained in one section of the Waukesha County Jail Rules pamphlet and in the 91 page Medical Policies and Procedures Manual for the Jail. Pursuant to the pamphlet and Manual, an inmate who requested non-emergency medical attention was to fill out a "Re-

Plaintiff in Opposition to Defendants' Motion and Brief for Summary Judgment Pursuant to Rule 56 at 6–7 (setting forth additional "facts"). The additional "facts" identified by Dockerty–Bostron are included in the court's discussion, where material.

quest for Medical Attention" form, which would then be referred to a jail nurse.

On June 22, 1987, the day after he arrived at the Jail, Dockerty submitted two "Request for Medical Attention" forms, neither of which referred to a problem with his wrist. On the night of July 7, he submitted a Request form that stated "My hand is still messed up." As noted on that form, he was then seen by Nurse Susan A. Patterson, who scheduled Dockerty for an "MD visit" on July 9, 1987.

Dockerty was seen by Dr. Robert Reichle on July 9, 1987. Dr. Reichle noted tenderness in the left wrist and ordered that the left wrist be x-rayed. Following the doctor's order, Nurse Patterson scheduled an X-ray appointment for Dockerty at Occupational Health Associates at 6:00 p.m. the same day, July 9.

On the evening of July 9, Dockerty was taken from his cell block and informed that he was being taken for an X-ray. Because Dockerty apparently had a visit scheduled with his mother at the same time and was not allowed to contact her about his doctor's appointment, he refused to go to the X-ray appointment. Dockerty then signed a "Medical Waiver" which stated that he chose not to have the X-rays and which released the County and Department from liability.

From July 10 through August 5, 1987, Dockerty submitted 14 "Request for Medical Attention" forms. Not one of the forms referred to a wrist problem. On August 5, Dockerty was seen and examined by both Nurse Patterson and Dr. Reichle for a standard inmate health appraisal. During these examinations, he made no complaints to Nurse Patterson or Dr. Reichle concerning his wrist.

From August 6 through September 1, 1987, Dockerty submitted 12 "Request for Medical Attention" forms. Not one of the forms referred to a wrist problem. On the night of September 2, he submitted a form which stated "need nail clippers and also to have my wrist looked at again by the doctor." As noted on

that form, he was seen by Nurse Patterson on September 3, who gave him some clippers and scheduled him for the clinic the same day.

Dockerty saw and was examined by Dr. Reichle on September 3, 1987. Reichle noted left wrist pain and ordered an X-ray of the left wrist. Following the doctor's order, Nurse Patterson scheduled an X-ray appointment for Dockerty at Occupational Health Associates the same day, September 3. This time, Dockerty went to the appointment. His left wrist was x-rayed, revealing a healing compression fracture.

Brief of Defendants in Support of Motion for Summary Judgment Pursuant to Rule 56 at 2–5 (citations omitted).

## II. SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56(c), parties moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *McGraw–Edison Company v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir. 1986). When faced with a properly supported motion for summary judgment, the nonmovant may not avoid judgment by simply resting on his pleadings. If the nonmovant bears the burden of production on an issue at trial, he must affirmatively demonstrate, by specific showings, that there is a genuine issue of material fact requiring a trial. *See First National Bank of Cicero v. Lewco Securities Corporation*, 860 F.2d 1407, 1411 (7th Cir.1988).

■ A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A summary judgment proce-

dure is not meant to be a trial on affidavits. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. At the summary judgment stage the judge's function is to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case such as this, the record must show that a jury could find by a preponderance of the evidence that the party upon whom the burden of proof is imposed is entitled to a verdict in his favor. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. If that party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 106 S.Ct. at 2510–11.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at tri-

al." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

In this case the governing law is found in section 1983 of Title 42 of the United States Code which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. To prevail on a claim under section 1983, a plaintiff must show that: (1) he held a constitutionally protected right; (2) he was deprived of this right in violation of the Constitution; (3) the defendants caused this deprivation; and (4) the defendants acted under color of state law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir.1988).

As his first cause of action, Dockerty–Bostron claims that his Fourteenth Amendment right to due process [4] was violated when personnel at the Waukesha County Jail failed to render adequate medical care to him while he was in pretrial detention. As his second cause of action, the plaintiff alleges that Waukesha County is liable because it failed to hire, supervise and train

---

**4.** In his complaint the plaintiff mentions the First, Fifth and Eighth Amendments as bases for "jurisdiction." *See* Complaint Under the Civil Rights Act, 42 U.S.C. Sec. 1983 at Part IV, ¶ 2. However, in a previous order, the magistrate correctly identified the sole issue as whether, as a pretrial detainee at the Waukesha County Jail, Dockerty–Bostron's Fourteenth Amendment due process right to be free from punishment was violated by the defendants. *See* Order of Magistrate Robert L. Bittner (April 25, 1990). The

complaint sets forth no claims under the First or Eighth Amendments. And, while the Fourteenth Amendment incorporates the protections of the Fifth Amendment, federal action is required to state a claim for deprivation of due process directly under the Fifth Amendment. *See O'Donnell v. Village of Downers Grove*, 656 F.Supp. 562, 568 (N.D.Ill.1987). Dockerty–Bostron has not identified any federal involvement, so he cannot maintain any claim directly under the Fifth Amendment.

its jail personnel properly and that this "policy and practice" resulted in his injury. *See* Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 at Part IV, ¶¶ 29–32.

In moving for summary judgment, the defendants argue that the facts do not show that Dockerty–Bostron's Fourteenth Amendment rights were violated by being denied adequate medical care. They contend that the undisputed record shows that the plaintiff failed to inform them of the need for medical attention for his wrist and that, once he did inform them, prompt and adequate medical care was rendered. According to the defendants, Dockerty–Bostron cannot prevail on his first cause of action because the record does not show any personal involvement by defendants Klink and Conine and he cannot prevail on his second cause of action because he cannot prove that Waukesha County failed to train its jail personnel to render adequate medical assistance to pretrial detainees.

### A. FIRST CAUSE OF ACTION

In his complaint, Dockerty–Bostron alleges that two unknown Waukesha County deputies—John Doe and Richard Roe—while working as jailers, deliberately and intentionally failed to provide him with medical treatment for his left wrist. Pretrial detainees such as Dockerty–Bostron are protected under the Due Process Clause of the Fourteenth Amendment from being punished without being convicted of a crime. *See Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir.1988), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). A pretrial detainee's due process right to be free from punishment is violated when a jailer fails to secure proper and reasonable medical aid for an inmate who suffers from a serious injury while confined. *See Matzker v. Herr*, 748 F.2d 1142, 1147–49 (7th Cir.1984).

Under these legal principles, Dockerty–Bostron has established that he has a constitutionally protected right and it

appears that the unnamed defendants were acting as jailers under color of state law. However, the plaintiff has failed to identify any facts establishing that the individual defendants named in the complaint—Sheriff Klink and Jail Administrator Conine—were personally involved in any alleged violation. Both Klink and Conine deny any personal involvement with Dockerty–Bostron. *See* Affidavit of Raymond J. Klink at ¶¶ 3 & 4 (filed June 26, 1990); Affidavit of William H. Conine at ¶¶ 8 & 9 (filed June 26, 1990). And Dockerty–Bostron has not been able to dispute their denials. There is no *respondeat superior* liability under section 1983, so lack of personal involvement precludes any liability for Klink and Conine in their personal capacities. *See Martin v. Tyson*, 845 F.2d at 1455.

This leaves the "Doe" and "Roe" defendants. Dockerty–Bostron has been given ample time in which to conduct discovery, but he has not been able to identify the deputy sheriffs who were personally involved with his treatment. At this stage of the proceedings, the court will not allow Dockerty–Bostron to maintain his action without identifying the "Doe" and "Roe" defendants. *See Stratton v. City of Boston*, 731 F.Supp. 42, 45 (D.Mass.1989). Therefore, summary judgment will be granted to the defendants—both named and unnamed—on Dockerty–Bostron's first cause of action.

### B. SECOND CAUSE OF ACTION

Dockerty–Bostron is also suing Klink and Conine in their official capacities. The claims against Klink and Conine in their official capacities are actually claims against Waukesha County, as is the claim against the Waukesha County Sheriff's Department. *See Martin v. Tyson*, 845 F.2d at 1455. Even though the doctrine of *respondeat superior* is inapplicable to section 1983 actions (*see* Part III(A), above), a county may be held liable for its official policies.[5] *Id.* Consequently, as his second

---

5. A local governmental body cannot be held liable for punitive damages on an "official policy claim" under section 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Therefore, Dockerty–Bostron could not recover punitive damages on his second cause of action, even if he established liability.

cause of action, Dockerty–Bostron alleges that Waukesha County had a policy of failing to hire, train and supervise its jail personnel to render medical care properly. He claims there is an "affirmative link" between the injury to his wrist and this alleged lack of training on the part of Waukesha County. Dockerty–Bostron believes that, had the sheriff's deputies been better trained, they would have discovered that he had a broken wrist and would have seen to it that immediate medical attention was rendered.

In *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the United States Supreme Court, addressing a similar factual situation, ruled that:

> [T]he adequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*Id.* at 1204–05 (footnote omitted). *See also Erwin v. County of Manitowoc,* 872 F.2d 1292, 1297–98 (7th Cir.1989). The Seventh Circuit has defined "deliberate indifference" as "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Lane,* 894 F.2d 218, 221 n. 7 (7th Cir.1990). The court has also explained that:

> Only in limited circumstances can the allegation of a "failure to train" provide the basis for § 1983 liability.... A § 1983 claim based on the due process clause of the Fourteenth Amendment does not translate every tort committed by a state actor into a constitutional wrong.... It may happen that in view of the duties assigned to specific officers the need for enhanced training is so obvious, and the inadequacy of training is so likely to result in the violation of constitutional rights, that a jury could reason-

ably attribute to the policymakers a deliberate indifference to those training needs.... It is in such cases that the failure to offer proper training constitutes a policy for which a defendant is liable when improper training actually imposes injury.

*Erwin v. County of Manitowoc,* 872 F.2d at 1297–98 (citations omitted).

When a pretrial detainee makes a claim of inadequate training, the court must decide whether the training program at issue is adequate; and, if it is not, the question becomes whether such inadequate training can justifiably be said to represent county policy. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). In assessing the adequacy of a training program in view of the alleged harm to the plaintiff,

> A particular officer's unsatisfactory training cannot alone suffice to attach liability to the state. An officer's faults ... may result from factors other than the deficient training program.... Nor can plaintiff. prevail merely by proving that an accident or injury could have been avoided had an officer received enhanced training forestalling the particular conduct resulting in the injury. Even adequately trained officers sometimes err, and such error says little about their training program or the legal basis for liability. After all, in almost every instance where a § 1983 plaintiff has suffered a violation of his constitutional rights by a government employee the plaintiff can point to something the government could have done to protect against that unfortunate incident. This is why claims alleging a constitutional deprivation due to failure to provide training to employees are cognizable under § 1983, and yield liability only if that defendant's failure to train demonstrates its "deliberate indifference" to the constitutional rights of its residents.

*Erwin v. County of Manitowoc,* 872 F.2d at 1298 (citations omitted).

In moving for summary judgment, the defendants contend that the record belies

the plaintiff's claim that Waukesha County fails to train and supervise its employees who deal with jail inmates' medical problems. The Waukesha County Sheriff's Department—Jail Division has promulgated a "Medical Policies and Procedures Manual" which its personnel must follow. *See* Affidavit of William H. Conine at Exhibit A. In addition, the County has formulated the "Waukesha County Jail Rules" which tell inmates how to request medical attention. *See Id.* at Exhibit B. Steven P. Burroughs, a Correctional Officer Supervisor of the Waukesha County Jail, alleges that all employees follow the Manual and that:

> Each inmate who is received at the jail is given a copy of the Waukesha County Jail pamphlet. Each inmate who is received at the jail is also read a statement from a "Waukesha County Jail—Receiving Screening" form which explains how to request medical attention.

Affidavit of Steven P. Burroughs at ¶¶ 4 & 5.

Pursuant to these policies, Dockerty–Bostron was given a copy of the Rules and was told how to request medical care when he entered the Waukesha County Jail on June 21, 1987. *See Id.* at ¶ 6. The plaintiff claims that this initial instruction was inadequate because he was intoxicated at the time. *See* Brief of Plaintiff in Opposition to Defendants' Motion and Brief for Summary Judgment Pursuant to Rule 56 at 11. He also faults Waukesha County's policy of requiring written requests. Dockerty–Bostron claims that he made numerous oral requests for medical care for his injured wrist, but that his pleas were ignored. *See* Affidavit of Lesallan Dockerty–Bostron at ¶¶ 6–8.

Despite Dockerty–Bostron's criticisms, the record clearly shows that Waukesha County has promulgated procedures for responding to jail inmates' oral requests for medical care. *See* Affidavit of William H. Conine at Exhibit A, pp. 59–60; Affidavit of Susan H. Patterson at ¶ 5; Affidavit of Steven P. Borroughs at ¶ 7. Therefore, the county did not deliberately choose to implement a policy of ignoring inmates' oral requests for medical care. If Dockerty–

Bostron's oral requests were ignored, it was not done pursuant to a policy or because of lack of training, but because unnamed employees may have ignored the requests. Whatever the case, as explained above, "a particular officer's unsatisfactory training cannot alone suffice to attach liability" to the county. *See Erwin,* 872 F.2d at 1298.

The record also shows that Dockerty–Bostron was able to start submitting written requests for medical care for other maladies the day after he entered the jail. He submitted two request forms on June 22, one on June 28, and another on June 30. *See* Affidavit of Susan H. Patterson at Exhibit A. It was not until July 7, 1987, that he submitted a written request for care for his hand. *See Id.* at Exhibit A. After receiving this form, jail nurse Susan Patterson promptly made an appointment for Dockerty–Bostron to be examined by a physician on July 9. *See Id.* at ¶ 8. That same day he was scheduled to have his hand x-rayed, but Dockerty–Bostron had a visitor coming and chose not to leave the jail for the x-ray. *See Id.* at ¶¶ 8 & 9; Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 at ¶¶ 19 & 20. Dockerty–Bostron submitted no more written requests for attention to his hand or wrist until September 1, 1987, whereupon he again received a prompt visit with a physician. On that occasion, the physician took an x-ray which revealed that Dockerty–Bostron had a healing compression fracture of his left wrist. *See* Affidavit of Susan H. Patterson at ¶¶ 9–12. In all, Dockerty–Bostron made thirty-two written requests for medical attention during his 74–day stay at the Waukesha County Jail. *See Id.* at ¶ 7. Nurse Patterson alleges that treatment was rendered in response to each request. *See Id.*

Given these undisputed facts, the court finds no evidence of a conscious choice or policy of deliberate indifference on the part of Waukesha County or that a pattern of constitutional violations put the county on notice that its jail personnel were acting in a manner contrary to constitutional requirements. The record does not show or even raise a reasonable inference that

Waukesha County's policies regarding training and supervising jail personnel to deal with inmates' medical needs evince deliberate indifference to the due process rights of jail inmates.

In attempting to defeat the summary judgment motion, Dockerty–Bostron has identified no facts which would tend to prove that Waukesha County deliberately chose a hiring, training and supervision policy which would result in an unreasonable risk that jail inmates would not receive adequate medical care. The plaintiff has cited no instances of failure to render medical care to other inmates and, in his own case, he has made no showing that anything other than his own failure to fill out a written form caused him not to get prompt medical treatment for his wrist. Consequently, because Dockerty–Bostron has not demonstrated that he can make the showing of deliberate indifference required by *City of Canton v. Harris*, the defendants are entitled to summary judgment as a matter of law on this second cause of action.

## ORDER

For the reasons explained above, the court ORDERS that the defendants' Motion for Summary Judgment Pursuant to Rule 56 (filed June 26, 1990) IS GRANTED. *See* Federal Rule of Civil Procedure 56(c).

IT IS FURTHER ORDERED that the plaintiff's Request for Appointment of Expert Witness (filed May 18, 1990) IS DENIED because it is moot.

IT IS FURTHER ORDERED that this action is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter judgment as a separate document. This judgment shall provide that:

This action came on for hearing before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED

that judgment is entered in favor of the defendants (Waukesha County, Waukesha County Sheriff's Department, Sheriff Raymond J. Klink in his personal and official capacity, Jail Administrator William Conine in his personal and official capacity, John Doe, Richard Roe and the Deputies/Employees with the Waukesha County Sheriff's Department) dismissing all the claims in the complaint of plaintiff Lesallan Dockerty–Bostron.

IT IS FURTHER ORDERED AND ADJUDGED

that this action is dismissed with prejudice.

Done and Ordered.